213 P.2d 212

**DUVALL v. STONE et al.**

No. 5217.

Supreme Court of New Mexico.

Dec. 31, 1949.

Reese & Reese, Roswell, 'for appellants.

James T. Jennings, Roswell, for appellees.

Brice, Chief Justice.

This is an action to quiet title to real estate, brought by plaintiffs (appellants) against the defendants and others. The defendants (appellees) answered, claiming an interest in the 160 acres of the land hereinafter described; and by cross-complaint sought to quiet title as against the cross-defendants (plaintiffs and appellants herein), to "an undivided one-half interest in and to all the oil, gas and other minerals in and under, and that may be produced from the E½NE¼ of Sec. 10, and the W½NW¼ of Sec. 11, Twp. 12 South, Rge. 25 E., N. M. P. M." All situated in Chaves County, New Mexico. This is the same land in which defendants claimed an interest by their answer.

The trial court made its decision as follows:

"1. That the defendants E. Garnet Stone and Maud Lee Stone were the grantors in a certain quit claim deed dated March 16, 1942, recorded January 18, 1943, in Chaves County, New Mexico, conveying to J. G. Gantz the following described property, to-wit: E½ of the NE¼ of Section 10; W½ of the NW¼ of Section 11; All in Township 12 South Range 25 East, N. M. P. M. That said deed contained the following recitation: 'It is expressly understood that one-half of the one-eighth royalty interest is retained by the grantors.'

"2. That the Court has jurisdiction over the parties and the subject matter of this action.

"3. That it was the intention of the grantors by the instrument above set out to except and reserve unto said grantors a perpetual undivided one-half interest in and to all of the oil, gas and other minerals in and under said above described lands.

"4. That the use of the word 'royalty' by said grantors in said deed was intended by them to and did describe a perpetual mineral interest in fee and all benefits accruing therefrom.

"5. That any rights which plaintiffs had in said land were acquired through conveyances under J. G. Gantz and his successors in title to said property.

"From the foregoing Findings of Fact the Court makes the following Conclusions of Law.

"That the defendants and cross-complainants E. Garnet Stone and Maud Lee Stone are the owners of an undivided one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land, to-wit: E½ of the NE¼ of Section 10; W½ of the NW¼ of Section 11; all in township 12 South Range 25 East, N. M. P. M.

"2. That the minerals interests of said defendants and cross-complainants is a perpetual mineral fee interest.

"3. That the defendants E. Garnet Stone and Maud Lee Stone are entitled to a decree quieting their title to an undivided one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the lands above described against the plaintiff E. R. Duvall and Charlotte M. Duvall, his wife.

"4. That the plaintiffs are entitled to recover the relief prayed for in the complaint and have their title quieted in the land as against each of the defendants named in the complaint except E. Garnet Stone and Maud Lee Stone, and that as to said defendants plaintiffs are entitled to a decree quieting their title in and to said above described lands with the exception of interests above found to exist in said lands in favor and for the benefit of the defendants E. Garnet Stone and Maud Lee Stone."

Findings of Fact Nos. 3 and 4 are attacked because as it is asserted, neither of them is supported by substantial evidence.

The following are undisputed evidentiary "facts which defendants claim support the findings of fact":

On December 23, 1937, a tax deed was issued to defendant E. Garnet Stone by the county treasurer of Chaves County,

conveying to him tax title to the described 160 acres of land. Stone and wife, for the recited consideration of $1.00 executed an oil lease in the form generally used in this country, known as the 88 Producer's Lease, to Charles F. Tarkington, covering the 160 acres of land. It contained the usual provision for paying lessor's one-eighth of all oil and gas produced from the land during the existence of the lease. It provided: "If no well be commenced on the above land, or within one mile of said land, on or before June 1, 1940, this lease will be null and void as to both parties." The lease expired by its terms on June 1, 1940, because of default in commencing the drilling of a well by that date.

The defendants entered into a contract with one J. G. Gantz, dated March 16, 1942, wherein and whereby the defendants agreed to sell to Gantz, and Gantz agreed to purchase the 160 acres of land described. One of the provisions in the contract is as follows: "It is understood and agreed, between the parties that the parties of the first part shall retain and reserve $\frac{1}{2}$ of the royalty in the oil and gas in and under and to be produced from said land; that said $\frac{1}{2}$ royalty being equal to the $\frac{1}{16}$ royalty in all the oil and gas produced from said lands; that said lands now being under an oil and gas lease in favor of the Roxana Petroleum Company wherein the lessors are entitled to $\frac{1}{8}$ royalty in the oil and gas produced from said land."

On March 16, 1942, the same day the contract was made, Stone and wife conveyed the 160 acres to J. G. Gantz by quitclaim deed, which contained the following: "It is expressly understood that one-half ($\frac{1}{2}$) of the one-eighth royalty interest is retained by the grantors."

The trial court found and decreed title to the 160 acres and to other lands to be in plaintiffs, *except* as to an outstanding one-half interest in and to *all of the oil, gas and other minerals* in and under the 160 acres, which he found and decreed to be in the defendants.

(It should be stated here that we find no evidence in the record that the plaintiffs have any interest in the 160 acres of land in controversy. But as the trial court found that they did have an interest therein and so decreed, and no objection is made to the decree except as to its disposition of the underlying minerals, we will assume that it is otherwise correct.)

The plaintiffs have assigned many alleged errors, and have argued them under many points. But we are of the opinion that there is but one question, and that is the meaning of the reservation expressed in the deed, to-wit: "It is expressly understood that one-half of the one-eighth royalty interest is retained by the grantors."

The meaning of this and similar language in deeds has been the subject of ju-

dicial consideration by a number of courts, with a lack of harmony in the decisions.

At the time this deed was made an oil lease previously made to one Tarkington as grantee, had become null and void, as hereinbefore stated; although it was re-cited in the contract made between the same parties on the same day, that there was an oil lease in force in favor of the Roxana Petroleum Company. The record discloses that this was the Tarkington lease, which had previously become invalid by its terms.

There is some contention that the contract to convey and the deed made on the same day should be construed together. But we will assume that the deed was exe-cuted after the contract, which provided for its execution, and that the contract with respect to the mineral interest granted merged in the deed.

"The general rule with regard to merger in such cases was stated in Norment et ux. v. Turley et al., 24 N.M. 526, 174 P. 999, 1000, as follows: 'It is a well-established rule of law that prior stipulations are merged in the final and formal contract executed by the parties, and this rule ap-plies to a deed or a mortgage based upon a contract to convey. When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties. Devlin on Real Estate, § 850a. The rule is followed in practically all the cases.' Also see annotation in 84 A.L.R. 1008 et seq.

"An exception to this general rule is likewise stated in the Norment Case in the following language: 'There is an exception to the rule stated, which is that the contract of conveyance is not merged upon execu-tion of a deed where under the contract the rights are conferred collaterally and inde-pendent of the deed; there being no pre-sumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction. Where the right claimed un-der the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract cov-ering the same subject-matter cannot be shown as against the provisions of the deed.*' Also see annotation, 84 A.L.R. di-vision IV, p. 1017 et seq." Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P. 2d 377, 380.

Obviously the exception does not apply here.

The deed in question provides "that one-eighth royalty interest is retained by the

grantors." Whether the royalty reserved is a one-eighth of oil and gas, coal, any particular mineral, or all minerals, is not stated. However, the parties treat the exception in the deed as being that of oil and gas, and we will accept this construction of the exception by the parties, and treat the reservation as though it read: "It is expressly understood that one-half of the one-eighth royalty interest *in the oil and gas in and under the land conveyed* is retained by the grantors."

Findings of Fact 3 and 4 are not supported by any evidence. If they are implied by the language used in the deed they are surplusage and unnecessary. If not so implied, and it was the intention of the parties that one-half of the oil, gas and other minerals should have been conveyed as the findings indicate, the defendants' remedy was an action to reform the deed, as it is not ambiguous as construed by the parties. In any event the Findings 3 and 4 should be, and are, stricken.

"Royalty" interest in oil and gas reserved in a deed or provided for in an oil and gas lease, is a share of the product or profits (ordinarily ⅛) reserved by the owner for permitting another to develop his property for oil and gas, usually without expense to the property owner. State National Bank v. Morgan, 135 Tex. 509, 143 S.W.2d 757; Palmer v. Crews, 203 Miss.

806, 35 So.2d 430, 4 A.L.R.2d 483; Belgam Oil Co. v. Wirt Franklin Pet. Corp., Tex. Civ.App., 209 S.W.2d 376; Rist v. Toole County, 117 Mont. 426, 159 P.2d 340, 162 A.L.R. 406. It is held to be a grant of real estate in those states where mineral leases are held to be a transfer of interest in real estate, if not generally. Denver Joint Stock Land Bank v. Dixon, 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270; Arrington v. United Royalty Co., 188 Ark. 270, 65 S.W.2d 36, 90 A.L.R. 765; Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699; Sheffield v. Hogg, 124 Tex. 290, 77 S.W. 2d 1021, 80 S.W.2d 741; U. S. v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844; Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871, and see Annos. in 90 A.L.R. 770; 101 A.L.R. 871; 131 A.L.R. 1371. Summers Oil & Gas (Per.Ed.) Sec. 572; Glassmore, Oil & Gas Leases Etc. Sec. 18.

The courts of some states hold that a royalty interest is personal property. Hickey v. Dirks, 156 Kan. 326, 133 P.2d 107. In this state a grant or reservation of the underlying oil and gas, or royalty rights provided for in a mineral lease as commonly used in this state, is a grant or reservation of real property; Terry v. Humphreys, 27 N.M. 564, 203 P. 539. Mineral royalty retained or reserved in a conveyance of land is itself real property.

The defendant excepted in the deed, *in perpetuum,* the one-half of one-eighth royalty in all the oil and gas in and under the 160 acres of land. The record indicates an oil lease made in 1940 has long since lapsed by its terms. But whether it was in existence at the time the deed was made, is now in existence, or has lapsed, it does not affect defendants' title to one-half of the royalty on any oil and gas that any present or future lessee may produce from the land.

"The words 'royalty,' 'bonus,' and 'rentals' have a well-understood meaning in the oil and gas business. Likewise, 'minerals' and 'mineral rights' have a well-recognized meaning. Broadly speaking, a reservation of minerals or mineral rights without limitation would include royalties, bonuses, and rentals. A conveyance of land without reservations would include all minerals and mineral rights. However, it is well settled that a grantor may reserve minerals or mineral rights and he may also reserve royalties, bonuses, and rentals, either one, more or all. Here we have a reservation of only 'royalty rights.' It is obvious, it seems to us, that this does not include a reservation of bonuses or rentals, but only of an interest in oil, gas, or minerals paid, received, or realized as 'royalty' under any lease existing on the land at the time of the reservation, or thereafter executed by the grantee, his heirs or assigns." Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544.

Also see: Arrington v. United Royalty Co., 188 Ark. 270, 65 S.W.2d 36, 90 A.L.R. 765; Murphy v. Jamison, Tex.Civ.App., 117 S.W.2d 127; Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; La Laguna Ranch Co. v. Dodge, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 546; Beam v. Dugan, 132 Cal. App. 546, 23 P.2d 58; Texas Co. v. Daughtry, 107 Tex. 226, 176 S.W. 717, L.R.A. 1917F, 989; U.S. v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844; and see annotation "Oil and Gas Royalty as real or personal property," 101 A.L.R. 884.

Where royalty is not limited to the product removed from land under a particular lease, it is a perpetual interest in oil and gas to be thereafter produced from the land at any time. Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Palmer v. Crews, 203 Miss. 806, 35 So.2d 430, 4 A.L.R.2d 483 and Anno. following this case on page 492 et seq.; Calcote v. Texas Pacific Coal & Gas Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413, and unless the intention to limit an assignment of oil royalties to a particular lease is by clear and unequivocable language, the royalty will be construed to apply to any existing or subsequent lease. Dabney-Johnston Oil Corp. v. Walden, 4 Cal.2d 637, 52 P.2d 237.

The royalty here under consideration is not limited to production to be recovered under any particular lease. It is

real property, an interest in the oil and gas in or under the 160 acres of land in question. We construe the deed to except and reserve to the grantor, his heirs and assigns the perpetual ½ of the ⅛th royalty of oil and gas, or a perpetual ¹⁄₁₆th of all of the oil and gas produced, saved and marketed from said land under the terms of any lease, the interest of the grantor being free and clear of all development and operating expenses. We further construe the deed to mean that the grantee, his heirs and assigns own the exclusive leasing rights on this land, together with the exclusive right to all bonus monies and delay rentals, but the owner of the land cannot lease it so as to deprive the grantor of his royalty, if oil and gas are removed from the land now or at any future time. Carroll v. Bowan, 180 Okl. 215, 68 P.2d 773; Sykes v. Austin, 182 Okl. 299, 77 P.2d 719; Schlittler v. Smith, supra.

The cause is reversed and remanded with instructions to the district court to set aside his decree as to the defendants' title under their cross-action and enter a decree not inconsistent herewith.

The costs of this court shall be apportioned equally between the parties.

It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.