(No. 34551.—

ALBERT J. HUNSLEY *et al.*, Appellants, *vs.* ARNOLD VALTER *et al.*, Appellees.

*Opinion filed January 24, 1958.*

HERSHEY, J., took no part.

JOHN W. FRIBLEY, of Pana, and SWEENEY & SWEENEY, of Taylorville, for appellants.

HERSHEY & BLISS, of Taylorville, and ROY M. RHODES, of Springfield, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Appellants commenced an action to quiet title in them to the mineral rights underlying a rectangular tract of land of approximately 20 acres, located in Christian County. Appellees and their predecessors in title owned and possessed a rectangular 20-acre tract immediately to the south of the land in which appellants claimed an interest. The north 20 acres is traversed from northwest to southeast by a branch of the Sangamon River. Thus a 5.16-acre segment of the southwest portion of the north acreage is separated from the remainder of that property. The 5.16-acre segment is contiguous to the south tract and is not separated therefrom by a natural boundary.

Appellants contended that their predecessor in title acquired the north 20 acres in 1903, and conveyed it to a third party in 1918, reserving to himself the coal and min-

eral rights, which appellants claimed by devolution. Certain defendants denied the allegations of the complaint as to the 5.16-acre segment, and sought by counterclaim to quiet title in themselves to the mineral rights thereunder. Their counterclaim was based upon an alleged adverse and continuous possession of the segment for a period in excess of 20 years by their predecessor in title. (Ill. Rev. Stat. 1957, chap. 83, par. 1.) They contended that the adverse possession commenced in 1913, that is, prior to the separation of the surface and mineral estates by plaintiffs' predecessors in title.

Valter, the remaining defendant, was the oil-and-gas lessee of the other defendants. His counterclaim, seeking a declaration that his oil-and-gas lease was valid as against the plaintiffs was predicated upon the same prescriptive rights asserted by his lessor codefendants. For present purposes, we may treat all defendants as a unity.

The evidence for the defendants tended to show that a portion of the 5.16-acre segment was occupied by trees and a slough; that the remainder had been cleared for farming, and was continuously occupied and farmed by the defendants' predecessor in title or his tenants from 1913 until the date the counterclaim was filed. Defendants' claim of adverse possession was predicated upon said occupancy and use.

At the conclusion of the evidence, the chancellor dismissed plaintiffs' complaint for want of equity, allowed the counterclaims filed by the defendants, and entered a decree, quieting title in the plaintiffs to the mineral rights in that part of the north 20 acres lying north of the river, and quieting title in the defendants to the mineral rights in the 5.16-acre segment lying south of the river.

Plaintiffs appeal from those portions of the decree dismissing their complaint and quieting title in the defendants to the 5.16 acres. They insist that the original possession by the defendants' predecessor in title was permissive, with

the consequence that prescriptive rights in defendants could not result, absent a clear, unequivocal, and notorious disclaimer of the rights of plaintiffs' predecessor in title, prior to the severance of the mineral rights in 1918. They further contend that the evidence offered by the defendants on the issue of adverse possession was not of sufficient weight to warrant the decree of the trial court.

Appellants have not offered reasons why the dismissal of their complaint should be set aside. Nor could they. In their complaint, they alleged acquisition by their predecessor in title to the entire north 20-acre tract; his conveyance of the surface rights and reservation of mineral rights in 1918, and their ownership of those mineral rights by devolution. They further alleged the execution by the defendants of oil-and-gas leases to the 5.16-acre tract. Plaintiffs neither alleged nor proved their occupancy of the 5.16 acres at the time of filing suit, or that the land was at that time vacant and unoccupied. We have held that failure to allege and prove possession or vacancy of property is a jurisdictional defect in a suit to quiet title or remove a cloud. (*First National Bank of Assumption* v. *Gordon*, 371 Ill. 424, 426; *McGookey* v. *Winter*, 381 Ill. 516, 526.) Nor does the situation differ when the property in question is a mineral estate as distinguished from a surface estate. *Pickens* v. *Adams*, 7 Ill.2d 283, 291.

Plaintiffs adduced evidence from two of their number, the sons of plaintiffs' predecessor in title. They testified that in 1903 their father, one Thomas Hunsley, purchased the 20-acre tract; that they cleared timber from a portion of the 5.16 acres south of the river in the spring of 1903; that their father rented the 5.16 acres to one John Finlay, the tenant of defendants' predecessor in title to the 20-acre tract to the south. Finlay continued to pay rent upon the 5.16 acres and to farm it until 1911. The witnesses testified that in 1913 one Roland Cook commenced to farm the 5.16 acres. One of the two witnesses testified that Cook

once paid his father $10 rent in 1914 or 1915. That witness testified that he lived with his father on the 20 acres to the north until 1911, when he moved.

In support of their countercomplaint, the defendants called Walter Cook as a witness. He testified that, in partnership with his father, Roland Cook, he farmed the 5.16 acres from 1913 to 1936. During that time they were the tenants of defendants' predecessor in title to the 20 acres to the south. Walter Cook stated that all of the land south of the river was farmable, save for about an acre in a pond, and that he farmed all of the land that was farmable. He testified that during the entire time that he was a tenant on the property in question he and his father paid rent to their landlord on all that part of the property south of the river. On cross-examination, Walter Cook stated that he did not pay any rent to Thomas Hunsley and that he did not know whether his father had paid Hunsley rent. On redirect examination, he testified that he would have known had his father paid Hunsley rent.

Other defense witnesses testified that they had camped on the 5.16 acres before the conveyance in 1918 by Thomas Hunsley and that the small tract was then considered to belong to the owner of the 20-acre tract to the south.

The plaintiffs offered no evidence of possessory acts with regard to the 5.16 acres subsequent to 1915. Indeed, the last undisputed possessory act by the plaintiffs or their predecessor occurred in 1911. Granting permissive possession by Finlay from 1903 to 1911, it does not follow that possession by Walter Cook and his father, commencing in 1913, two years after Finlay's departure, was similarly permissive. Nor does it follow that permissive usage by Finlay was likewise permissive usage by his lessor of the south 20 acres. Clearly, when Walter Cook and his father became the tenants of the owners to the south, they paid rent to their landlord not only for the use of the 20-acre tract, but also for the use of the 5.16-acre tract. In

short, they relied upon the rights of defendants' predecessors in title to the 5.16 acres.

Plaintiff's testimony indicated that Walter Cook's father once gave Thomas Hunsley $10 for rent. There was no evidence as to what was being rented. Whatever the weight of that testimony, it was amply rebutted by Walter Cook's testimony to the effect that he did not know of payment by his father to Hunsley and that he would have known had such a payment been made. In this connection, we observe that the supposed payment by Roland Cook to Thomas Hunsley occurred from three to four years subsequent to the time at which the witness who so testified had moved from the Hunsley tract. Walter Cook was not a party to this litigation and apparently had no motivation which might account for a mistake in his recollection. The trial judge saw and heard the witnesses while they testified. His evaluations of their testimony, as evidenced by his decree, must prevail unless they are palpably contrary to the weight of the testimony.

Appellants contend that the defendants failed to make sufficient proof of adverse possession by their predecessor in title of the 5.16-acre tract. In *Schwartz* v. *Piper,* 4 Ill.2d 488, 492, we again enumerated the elements required to constitute proof of adverse possession. Such possession must be hostile, actual, visible and notorious, exclusive, continuous, and under claim of ownership.

In 1913, when the Cooks entered upon the 5.16-acre tract, they did so as tenants of the owner of the 20 acres to the south. Their payment of rent from 1913 to 1936 evidenced a recognition of the title of defendants' predecessors. Another witness testified that from 1936 until the date of the filing of the counterclaim, payments of rent continued to be made to defendants' predecessors. Hostility of possession does not imply an ill will, only an assertion of ownership adverse to that of the true owner and all others. (*Kinder* v. *LaSalle County Carbon Coal Co.* 301

Ill. 362, 366.) As noted, the supposed permissive possession by Finlay could not affect the defendants' rights in the absence of some relationship between Finlay and the owners of the south 20 acres with respect to the 5.16-acre tract. The hiatus of two years separating Finlay's departure from the possession of Cook serves further to negate the possibility of continuous permissive use.

The unrebutted evidence of the defendants showed that their possession of the 5.16 acres was an actual possession in excess of 40 years. Their tenants occupied it and farmed it for that period of time. Nor can plaintiffs successfully contend that such possession was neither visible, notorious, and exclusive, all of the evidence being quite to the contrary.

The acts required to accomplish adverse possession may vary, depending upon the nature of the property itself and the uses to which it may be adapted. (*Chicago Title and Trust Co.* v. *Darley,* 363 Ill. 197, 202.) Thus, as here, cultivation of the land may be sufficient. (*Siegle* v. *Criss,* 304 Ill. 338, 347.) The acts of the various tenants on the south 20 acres with reference to the 5.16-acre tract were such acts of dominion as would indicate to neighbors that the owners of the south 20-acre tract, acting by their tenants, exercised the exclusive control and management of the property. *Chicago Title and Trust Co.* v. *Darley,* 363 Ill. 197.

Plaintiffs further complain that the defendants' predecessors in title never made known to the plaintiffs' predecessor in title that they were asserting a hostile claim to any portion of the 5.16 acres. As we observed in *Leonard* v. *Leonard,* 369 Ill. 572, 577: "No mere words could assert title more satisfactorily than a continued exercise of ownership over the lands for a period of more than twenty years. Using and controlling property as an owner is the ordinary mode of asserting a claim of title. * * *"

Appellants invite our attention to *McIntyre* v. *McIntyre,* 287 Ill. 544, and *New York Central Railroad Co.* v. *Kin-*

*sella,* 324 Ill. 339, in support of the proposition that proof of adverse possession must be by clear, positive, and unequivocal evidence. In both of the cited cases, the parties asserting the prescriptive rights testified to intermittent and merely occasional use of the premises. Here exclusive and continued use has been established by ample evidence.

Plaintiffs further insist that there was insufficient evidence as to what portion of the 5.16-acre tract was cultivated. Plaintiffs' witnesses testified that about 2½ acres had been cleared, the remainder being slough and trees. Other witnesses testified that about 3 acres were cleared for farming and that a pond covered about an acre. Walter Cook testified that he cultivated all of the land south of the river that was arable. The presence of a small pond on the property and the possibility that every square foot of the property may not have been cultivated does not defeat defendants' adverse possession of the 5.16-acre segment as a whole. Here there was an apparent effort to cultivate and occupy all of the segment. Nor can the significance of the fact that the river creates a natural boundary be overlooked. It is apparent that the acts of the adverse possessors extended to the river to the extent that the swampy character of the land permitted. The testimony disclosed that the owners of the south 20 acres permitted persons to camp along the river where it cut through the north 20 acres. While occasional camping could not ripen into title, the fact that the campers turned to the owners of the south 20 acres for permission to camp on the uncultivated portions of the 5.16 acres is indicative of the claim of defendants' predecessors in title to all of the 5.16 acres of land south of the natural boundary.

We conclude that the chancellor's findings and conclusions were amply supported by the evidence. As is evidenced by his decree, the chancellor agreed with the parties hereto that where the mineral and surface estates are separated subsequent to the commencement of adverse posses-

sion, the continued adverse possession of the surface carries with it the prescriptive rights to subsurface minerals, as though the record title to surface and mineral estates had not been severed. In this we concur. (See Annotation 35 A.L.R. 2d, 124, 149-154.) The holding is not in conflict with our previous rulings that where the severance of surface and mineral estates occurs previous to the adverse possession, commencement of possession of the surface does not of itself result in prescriptive rights to the minerals below the surface. *Pickens* v. *Adams,* 7 Ill.2d 283, 292; *Kinder* v. *LaSalle County Carbon Coal Co.* 301 Ill. 362.

The decree of the circuit court is supported by the evidence, and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.