LUCY HERTEL EWALD, Plaintiff-Appellant, v. EDWARD H. HORENBERG-ER et al., Defendants-Appellees and Third-Party Plaintiffs. —(WILLIAM E. HOFFMEIER, Third-Party Defendant.)

Second District (2nd Division)  No. 74-252

Opinion filed April 13, 1976.

Lewis D. Clarke, Jr., of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

Schumacher, Wade, Jones, Kelly & Olson, of Chicago, for appellees.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff sued defendant claiming ownership of certain property which she allegedly acquired by adverse possession. After trial, the court found for defendants. Plaintiff appeals this finding.

Plaintiff's mother and father owned several parcels of real estate in Lake County, Illinois. A triangular portion of this property, parcels 2, 3, 4 and 5, lies between Illinois Routes 59A and Charadon Road in Freemont Township. This appeal concerns the ownership of parcel 4.

In March of 1918, after the death of plaintiff's father, plaintiff's mother deeded certain property to her children, plaintiff (Lucy) and Henry. The deed to Lucy is ambiguous, but because the parties agree that she was deeded parcels 1, 2 and 3, we assume her ownership of those parcels. Henry, deeded parcels 4 and 5, in 1939 sold that property to Joseph Hertel who sold the two lots to Bernard Hertel who, in turn, sold them to William Hoffmeier. Hoffmeier sold the property to defendants in April of 1964. In November, 1965, plaintiff filed suit claiming she owned parcel 4, contiguous with parcel 3, because of her open, visible and contiguous possession of the property for more than 20 years.

At trial in June, 1967, plaintiff testified that she was born and lived in a house on parcel 5 until 1917 when she moved to parcel 2. She married Bernard Ewald in 1919 and continued living on parcel 2 until 1948 when she moved to Mundelein. Both she and her husband farmed parcel 4 from 1919 until 1948 and then rented the property to her son, Joe, who has since farmed it continuously. According to plaintiff, a fence along the west side

of parcel 4 separated it from parcel 5 for as long as she could remember. Her brother, Henry, farmed the property west of the fence (parcel 5) until 1939 when he sold it. Both of Henry's successors farmed only parcel 5. Plaintiff testified that she thought she had been paying taxes on parcel 4 and she believed she owned it.

Henry, through his evidence deposition, testified that he lived on parcel 5 from his birth until 1910 when he married and moved to parcel 1 where he lived until 1918. In 1918 he moved back to parcel 5 and remained until 1938. He farmed all the property for his mother until 1919 when plaintiff married. Thereafter plaintiff and her husband farmed parcels 1, 2, 3 and 4, and Henry farmed parcel 5. He further testified that Joe Ewald, plaintiff's son, farmed parcel 3 and 4 but that he did not know whether plaintiff and Bernard sold the property to Joe. When asked if he ever farmed parcels 3 and 4 after plaintiff's marriage, Henry responded, "I say I might have worked it, but didn't have nothing because we helped together. Bernard [plaintiff's husband] came over and helped me and I helped [him] * * *." Henry testified that there was a fence on the west line of parcel 4 for as long as he could remember, that he had helped his father to replace an earlier fence, and later had, with plaintiff's husband, rebuilt part of the fence.

Bernard Ewald, plaintiff's husband, corroborated plaintiff's and Henry's testimony that he had farmed parcel 4 every year since his marriage until his son, Joe, farmed it; that the fence on the west line of parcel 4 had been there since before 1919; and that he and Henry had repaired it in 1939, splitting the expense.

Joe Ewald testified that he rented parcels 3 and 4 from his mother and that he farmed parcel 4 each year from 1938 to 1966. He stated that there existed a fence on the west line of parcel 4 which he and Bernard Hertel replaced in 1953 or 1954, each paying one-half the cost.

Defendant, Edward Horenberger, testified that he owned title to parcels 4 and 5 and lived on that property since June, 1954, and that Joe Ewald farmed parcel 4 in 1964 and 1965. Defendants' predecessor in title, William Hoffmeier, stated that he purchased and lived on parcel 5 until he sold the property to defendants. During his 3 years on the property, he pastured stock on parcel 5, west of the fence, while for a period of one or two years Joe Ewald farmed the area immediately east of the fence (parcel 4). Defendants introduced exhibits establishing that real estate taxes on parcel 4 were paid by Hoffmeier in 1960, 1961 and 1962, and paid by defendants in 1963, 1964, 1965 and 1966.

In June, 1970, the matter having been under advisement for three years, the trial court held that plaintiff had not proved her title to the property under claim of adverse possession, and that at most Henry Hertel had given plaintiff a license to use parcel 4. While plaintiff asserts various

claims on appeal, we find it necessary to only address the contention that the finding of the trial court was against the manifest weight of the evidence.

■■■ For plaintiff to establish her claim by adverse possession in a manner sufficient to defeat the rights of a party holding legal title, she must prove that her possession was hostile in its inception and continuous without interruption for a period of 20 years. It must be actual, visible and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner. (*Turney v. Chamberlain*, 15 Ill. 271, 273-74 (1853); *Walter v. Jones*, 15 Ill. 2d 220, 225 (1958).) The requirement of hostile possession is met where such possession is in opposition to the possession of the true owner. Animosity need not exist between the party claiming adverse possession and the title holder. A good-faith but mistaken belief by the possessor that she holds title is a hostile claim sufficient to establish her right of ownership so long as all requisite elements are proven. (*Hankins v. Pontoon Beach Amusement Park, Inc.*, 28 Ill. App. 3d 512, 514 (1975).) The making of improvements or acts of dominion over land, indicating to persons residing in the immediate neighborhood who has exclusive management and control of the land, are sufficient to constitute possession. A fence is notice of actual occupancy which creates the bar of the statute of limitations. (*Chicago Title & Trust Co. v. Darley*, 363 Ill. 197, 201 (1936).) The elements of adverse possession must be established by strict, clear and unequivocal proof as there is a legal presumption that possession of real estate is subservient to the rights of the owner of the record title. *Pullman Car & Manufacturing Corp. v. Stroh*, 349 Ill. 492, 506 (1932).

■■ In the instant case, testimony of the witnesses established that plaintiff and her husband farmed parcel 4 along with parcels 2 and 3 from 1919 until 1948, after which her son, Joe, farmed it. Defendants argue that Henry's farming of parcel 4 subsequent to 1919 was consistent with his legal ownership of it. Our review of Henry's testimony discloses, however, that Henry merely assisted plaintiff's husband in farming parcel 4, and that he did not claim ownership to this parcel after plaintiff's marriage. He in fact stated that he "didn't have nothing."

The evidence is undisputed that the fence separating parcels 4 and 5 had been in existence from a time prior to 1918 to the date of trial, that it was repaired in 1939 at the expense of Henry and Bernard Ewald, and that it was treated as a boundary line by the occupants. This evidence buttresses plaintiff's claim that she openly occupied the parcel and claimed it as her own. *Chicago Title & Trust Co. v. Darley*, at 201.

The judgment of the trial court will be reversed if its findings are found to be contrary to the manifest weight of the evidence. Manifest weight of the evidence means the clearly evident, plain and indisputable

weight of the evidence. We find that plaintiff established her claim to ownership of the property through adverse possession (by clear and convincing evidence) and that the judgment of the trial court was against the manifest weight of the evidence. *Willis v. Rich,* 30 Ill. 2d 323 (1964).

For the reasons stated the judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for the plaintiff.

Judgment reversed and remanded with directions.

RECHENMACHER and DIXON, JJ., concur.