592 P.2d 961

S. J. SACHS, also known as Simon J. Sachs, a married man, Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF the TOWN OF CEBOLLETA LAND GRANT et al., Defendants-Appellees.

KERR–McGEE CORPORATION et al., Plaintiffs-Appellants,

v.

BOKUM RESOURCES CORPORATION et al., Defendants-Appellees.

Nos. 11675, 11676.

Supreme Court of New Mexico.

Nov. 22, 1978.

Rodey, Dickason, Sloan, Akin & Robb, Victor R. Marshall, Albuquerque, for plaintiff-appellant.

Edward J. Apodaca, Albuquerque, for Bd. Trustees.

Marchiondo & Berry, Zenon F. Myszkowski, Albuquerque, for defendants & intervenors.

Robert H. McBride, Albuquerque, for Bd. Trustees and Marquez Peoples.

## OPINION

McMANUS, Chief Justice.

The present cases involve the same parties and the same real estate as *Sachs v. Board of Trustees, Etc.*, 89 N.M. 712, 557 P.2d 209 (1976). In that case, the mandate of this Court reads as follows:

> For the foregoing reasons, we conclude that the doctrine of acquiescence applies, making the long-recognized fence line the boundary between the parties for all purposes. Therefore, the trial court must be reversed. To the extent that it is inconsistent with this holding, the denial of Bokum's motion to set aside the 1951 quiet title judgment (based on the Turley survey's metes and bounds description) must also be reversed.
>
> The cause is reversed and remanded to the District Court of McKinley County for the entry of an appropriate decision and judgment in accordance with the views herein expressed.

*Id.* at 722, 557 P.2d at 219. Upon remand, the trial court ordered that the boundary between the parties for all purposes, including mineral use and interest purposes, is the fence line as established by the Supreme Court in *Sachs v. Board of Trustees, Etc.*

As this Court stated in *Varney v. Taylor,* 79 N.M. 652, 655, 448 P.2d 164, 167 (1968), "It is a general rule that if, upon remand, the court below has acted in substantial conformity to the direction of the appellate court, its judgment will not be disturbed on a subsequent appeal." In our opinion, the trial court properly complied with the mandate of this Court. Therefore, we will not disturb its judgment. The question is res judicata and appellants are barred from asserting any further claim. *City of Santa Fe v. Velarde,* 90 N.M. 444, 564 P.2d 1326 (1977).

The decision of the trial court is hereby affirmed.

IT IS SO ORDERED.

SOSA, J., and C. FINCHER NEAL, District Judge, sitting by designation, concur.

EASLEY and PAYNE, JJ., respectfully dissenting.

PAYNE, Justice, dissenting.

I dissent.

This is a dispute over mineral rights. S. J. Sachs owned land in McKinley County. When a boundary dispute arose between Sachs and the Cebolleta Land Grant, Sachs filed a quiet title action. A compromise was reached in 1951 and the district court entered a decree reflecting this compromise. Sachs then deeded his land to McKenzie, reserving one-half of the production royalty interest in the underlying minerals. In 1953 McKenzie built a fence inside the surveyed boundary of the land deeded to him by Sachs. McKenzie later deeded the land to Kerr-McGee Corporation and the land owned by the Cebolleta Land Grant was transferred to Bokum Resources Corporation. In 1974 Kerr-McGee filed suit against Bokum, seeking to quiet title along the line established by the 1951 court decree. The trial court quieted title to Kerr-McGee and Bokum appealed. This Court reversed. *Sachs v. Board of Trustees, Etc.,* 89 N.M. 712, 557 P.2d 209 (1976). The opinion held that the parties had acquiesced in the fence line and it became the boundary between the parties. The Court further held that the fence line was also the boundary for the unsevered subsurface minerals. Upon remand, the district court entered judgment on the mandate as to the one-half interest in the mineral rights belonging to Kerr-McGee and took under advisement whether the severed rights belonging to Sachs passed to Bokum. Later the Court entered a second judgment on the mandate against Sachs and Sachs appealed. I would reverse the decision of the trial court respecting the Sachs interest.

Sachs reserved one-half of the production royalty interest in the minerals. The Bokum group claims that the interest reserved by Sachs is void because it violates the rule against perpetuities. I do not agree. *Price v. Atlantic Refining Company,* 79 N.M. 629,

447 P.2d 509 (1968), held that royalty interests are not future interests and therefore are not subject to the rule against perpetuities. Appellees argue that this is a production royalty and not a simple royalty, but I can see no difference in a royalty and a production royalty. Every royalty interest is dependent on production. *See Price; Duvall v. Stone,* 54 N.M. 27, 213 P.2d 212 (1949).

In deciding the remaining issues, a careful examination of the first *Sachs* opinion is essential. In that case this Court determined two things. First, it found that the trial court erred in holding that the parties did not acquiesce in the fence line as the boundary. Secondly, it found that when title to land is acquired by acquiescence, the unsevered mineral rights are also acquired. In reaching the second conclusion the Court stated:

> In addition, the rule in New Mexico appears to be that *unless minerals are specifically excluded,* they pass with the estate. See *Duvall v. Stone,* 54 N.M. 27, 213 P.2d 212 (1949). *Before severance of the subsurface minerals, possession of the surface implies possession of the minerals below. Lykes Bros., Inc., v. McConnel,* 115 So.2d 606 (Fla.Ct.App.1959); *Hunsley v. Valter,* 12 Ill.2d 608, 147 N.E.2d 356 (1958); *Smith v. Nyreen,* 81 N.W.2d 769 (N.D.1957); *Dixon v. Henderson,* 267 S.W.2d 869 (Tex.Civ.App.1954). *Also, when title to the surface passes by adverse possession (to which acquiescence is analogous and frequently compared, see, e. g., State of Iowa v. Carr,* supra), *the mineral estate is included. Bremhorst v. Phillips Coal Co.,* 202 Iowa 1251, 211 N.W. 898 (1927). Moreover, a mineral lease is considered to be real property in New Mexico (*Terry v. Humphreys,* 27 N.M. 564, 203 P. 539 (1922)), and it is only logically consistent to hold that all the related real property interests embodied in a certain tract of land should pass together. (Emphasis added.)

89 N.M. at 721, 557 P.2d at 218.

This Court reversed the case and remanded it to the district court "for the entry of an appropriate decision and judgment in accordance with the views herein expressed." *Id.* at 722, 557 P.2d at 219. Both sides agree that the doctrine of the law of the case should apply. The question then is what is the law of the case. The opinion states that unless minerals are excluded they follow the surface rights. Thus when Kerr-McGee lost its surface interest in the land it also lost its interest in the underlying minerals. The opinion, however, is not so clear on what happens to the ownership of the mineral rights that were severed prior to acquiescence.

A careful examination of the law cited in the opinion and the common law governing mineral rights indicates that severed mineral rights do not pass with the surface. The opinion states that "unless minerals are specifically excluded, they pass with the estate." *Id.* at 721, 557 P.2d at 218. Conversely, if minerals are specifically excluded they constitute a separate estate and do not pass with the surface. *Johnson v. Gray,* 75 N.M. 726, 410 P.2d 948 (1966); *Kaye v. Cooper Grocery Company,* 63 N.M. 36, 312 P.2d 798 (1957); *Duvall, supra.*

The opinion continues, "[b]efore severance of the subsurface minerals, possession of the surface implies possession of the minerals below." 89 N.M. at 721, 557 P.2d at 218. Again the converse is true. After the subsurface minerals have been severed, possession of the surface does not imply possession of the minerals. *Hunsley v. Valter,* 12 Ill.2d 608, 147 N.E.2d 356 (1958); *Dixon v. Henderson,* 267 S.W.2d 869 (Tex.Ct.App.1954). In the *Hunsley* case, cited with approval in the *Sachs* opinion, the Supreme Court of Illinois held in an adverse possession case that unsevered mineral rights pass with the surface. But the Court in *Hunsley* made it clear that its holding was not in conflict with its prior ruling that:

> [W]here the severance of surface and mineral estates occurs previous to the adverse possession, commencement of possession of the surface does not of itself result in prescriptive rights to the minerals below the surface. Pickens v. Adams, 7 Ill.2d 283, 292, 131 N.E.2d 38, 56 A.L.

R.2d 605; Kinder v. LaSalle County Carbon Coal Co., 301 Ill. 362, 133 N.E. 772. 147 N.E.2d at 360.

The *Sachs* opinion continues, "[a]lso, when title to the surface passes by adverse possession (to which acquiescence is analogous and frequently compared, see, e. g., *State of Iowa v. Carr,* supra), the mineral estate is included." 89 N.M. at 721, 557 P.2d at 218. Once more the converse is true. Other jurisdictions addressing the issue have held that if mineral rights are severed prior to the commencement of adverse possession they are not obtained by adverse possession of the surface. *Henley v. United States,* 184 Ct.Cl. 315, 396 F.2d 956 (1968); *Gerhard v. Stephens,* 68 Cal.2d 864, 69 Cal.Rptr. 612, 442 P.2d 692 (1968); *Bushey v. Seven Lakes Reservoir Company,* 545 P.2d 158 (Colo.Ct.App.1975); *Knott Coal Corporation v. Kelly,* 417 S.W.2d 253 (Ky.1967); *Turner Lumber Company v. Beckham,* 277 So.2d 110 (Miss.1972); *Douglass v. Mounce,* 303 P.2d 430 (Okla.1956); *Broadhurst v. American Colloid Company,* 85 S.D. 65, 177 N.W.2d 261 (1970); *Kanawha & Hocking Coal & Coke Co. v. Carbon County,* 535 P.2d 1139 (Utah 1975).

In *Douglass, supra,* the court held:

It is a rule of almost universal acceptance that the severance of a mineral interest from the ownership of the surface estate creates a separate estate in those minerals. . . . The possession of the surface thereafter is not adverse to this separate mineral estate even when the surface owner also owns a portion of the minerals. This court has subscribed to that view.

*Douglass* at 433 (citation omitted).

The law of the case is that unsevered mineral rights pass with the surface rights but severed mineral rights are unaffected by the transfer of the surface rights. It would be an anomaly to hold that even though Bokum could not have purchased the Sachs interest from McKenzie, he could obtain the interest by McKenzie's acquiescence. Such a holding is not only contrary to logic but to the law as well. *Henley, supra; Gerhard, supra; Bushey, supra;*

*Knott, supra; Turner, supra; Douglass, supra; Broadhurst, supra; Kanawha, supra.*

Appellees claimed that Sachs should be precluded from raising the issue of his interest in the mineral rights because the Court has already disposed of the issue. The majority seems to have accepted this view. Even though there was no reference to the Sachs interest in the opinion, Sachs filed a motion for rehearing before the Supreme Court setting out the argument concerning his mineral rights. The motion was denied. Sachs twice more filed motions for rehearing. Both of those motions were denied. Appellees claim that Sachs has had his day in court, lost and should not be given an opportunity to litigate the same issue again. I cannot agree with the appellees' argument nor with the majority opinion. In the first *Sachs* opinion this Court remanded the case to the district court for the entry of an appropriate decision in accordance with the view expressed in the opinion. The mandate from this Court as to the Sachs interest was ambiguous and led the trial court to misinterpret the law regarding severed mineral rights. When the motions for rehearing were heard, the Sachs interest had not been ruled on by the trial court. It was not until after the trial court entered its decision that Sachs had an appealable issue.

I would reverse the decision of the trial court as to the ownership of one-half of the production royalty interest in the land between the boundary set by the 1951 court decree and the fence built by McKenzie and remand for the entry of a judgment quieting title of that interest in the name of S. J. Sachs.

EASLEY, J., concurs.