RENE SIERENS, Plaintiff and Counterdefendant and Appellant-Counterappellee, v. BILLY J. FRANKENREIDER, Defendant and Counterplaintiff and Appellee-Counterappellant.

Third District   No. 3—93—0463

Opinion filed March 8, 1994.—Modified on denial of rehearing April 19, 1994.

Ronald F. Coplan, of Morrison, for appellant.

Ward, Murray, Pace & Johnson, P.C., of Sterling (Thomas L. Sanders, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Rene Sierens, filed suit to quiet title to a strip of land titled in Sierens' name, located in Henry County. Defendant, Billy J. Frankenreider, counterclaimed, contending that he had acquired this portion of land, as well as two additional adjacent strips of land titled in Sierens' name, by adverse possession. Following a hearing, the circuit court of Henry County found that Frankenreider had acquired a one-tenth-acre parcel of property. The court further found that Frankenreider had failed to prove adverse possession of the parcels which constituted the remaining two strips of property. Plaintiff appeals, defendant counterappeals, and we reverse in part.

Sierens owns a 160-acre parcel of land being the northeast quarter (NE $1/4$) of section 26 in Alba Township (Sierens property). Frankenreider owns the adjacent 160-acre parcel to the east of Sierens' property, being the northwest quarter (NW $1/4$) of section 25 (Frankenreider property). Thus, the two properties are separated by the section line between sections 25 and 26. The record indicates that Frankenreider believed that the center of the township road which runs north and south was the section line separating their properties. However, the section line separating the two properties actually runs east of the township road. Engineer Kevin Wallace surveyed the property and testified that the east township right-of-way line was approximately the line of utility poles which run along the east edge of the township road. Consequently, Mr. Wallace testified that the strip of land which lies between the east township right-of-way line and the section line is actually part of the Sierens property to which Frankenreider claims ownership by adverse possession.

We will summarize the testimony at trial which tracked the history of the property at issue. Raymond Taets testified that in the 1930's his family moved onto the homestead parcel of the Frankenreider property (homestead parcel), which is a 2.14-acre parcel centered on the west edge of the Frankenreider property. His father, Emil Taets, bought the property in the late 1940's. Raymond testified that when he moved onto the property with his family, there was a driveway from the township road, across the disputed strip of land to the homestead parcel of the Frankenreider property. The Taets family improved the driveway by building it up with "stoker coal" and putting gravel on it. The Taets family also built an equipment shed on the homestead property which encroaches on the disputed strip of property. Raymond testified that his father replaced and maintained the fence that ran along the utility poles through most of the disputed strip. He further testified that the Taets family farmed the Frankenreider property up to the fenceline every year from the

1930's to the early 1950's and dug the ditch that runs length of the Frankenreider property along the east side of the township road.

Raymond testified that in the early 1950's his father sold the Frankenreider property to Carl and Darlene Nelson, who are now deceased. Carl and Darlene's son, Donald Nelson, testified that he lived on the Frankenreider property until 1968 or 1969 and that his father always maintained the driveway by regraveling it. Donald Nelson further testified that his family painted and repaired the equipment shed and mowed the property up to the township road while he lived on the property. Donald Nelson testified that his family maintained the fence during the entire period he lived there and that his family farmed the Frankenreider land up to the fenceline. Mr. Nelson testified that the relationship between Sierens and the Nelsons was "just like family."

In the early 1970's, Gene Taets purchased the Frankenreider property. Gene Taets testified that he treated the entire disputed strip as his own. He testified that he once regraveled the driveway, which his family used regularly, and that he reroofed and repainted the equipment shed. Gene Taets testified that he farmed as close as possible to the fenceline that ran through most of the disputed strip along the township road until he removed the fence in the early 1970's, and that he subsequently farmed as close to the utility poles as possible. Gene Taets sold the property to Frankenreider in 1989.

Frankenreider contracted to sell the homestead parcel to James and Janet Strickland while retaining the rest of the farm. Frankenreider had the property surveyed pursuant to this proposed sale. Frankenreider received a letter from the surveyor dated August 29, 1989. At that time, Frankenreider first learned that the disputed strip along the west edge of his property was not actually part of his 160-acre tract in section 25, but was part of the Sierens property. Frankenreider was unable to acquire title to the homestead frontage of the disputed strip and his sales contract with the Stricklands was rescinded.

As aforesaid, Sierens filed an action seeking to clear title only to the homestead parcel of the disputed strip. Frankenreider counterclaimed on a theory of adverse possession, requesting an order granting him title to the homestead frontage as well as the remainder of the disputed strip to the north (north strip) and south (south strip) of the homestead frontage. The trial court found that Frankenreider had acquired the homestead frontage in fee by adverse possession. However, the trial court denied Frankenreider's request for an order granting him title to the north and south strips of the disputed property.

Sierens appeals contending that the court's finding that Franken-

reider established ownership of the homestead frontage by adverse possession was against the manifest weight of the evidence. Frankenreider counterappeals claiming that the court's finding that he failed to establish ownership of the north and south strips by adverse possession was against the manifest weight of the evidence.

■ In Illinois, one claiming title to real property has the burden of establishing by clear and unequivocal evidence that possession of the property was (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, (5) under a claim of title adverse to the true owner, for the 20-year statutory period (735 ILCS 5/13—101 (West 1992)). Presumption of ownership is with the title owner. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.) An appellate court will not overturn a trial court's finding regarding the elements of adverse possession unless such finding was against the manifest weight of the evidence. *Wanless v. Wraight* (1990), 202 Ill. App. 3d 750, 754, 559 N.E.2d 798, 800.

■ Sierens contends that the driveway and shed which exist on the homestead frontage are an encroachment on the Sierens property and urges us to find that Sierens granted Frankenreider a license or easement for such encroachment. However, the record indicates that beginning with the Taets family, who moved onto the homestead parcel in the 1930's, the occupants of the homestead parcel have always improved and maintained both the driveway and equipment shed by regraveling the driveway, and repainting and reroofing the shed, under the belief that the shed and driveway were on their property. Sierens testified that he knew that the section line was to the east of the public right of way. However, we note that the Frankenreider property changed hands four times since the 1930's and the record indicates that the Sierens family never indicated to the owners of the Frankenreider property any claim to property east of the county road until the Stricklands moved onto the property. Further, Mr. Strickland testified that about two weeks after his family had moved onto the property, Sierens' two sons approached him asking about storing machinery in the machine shed, to which Mr. Strickland said no. We find these facts contradictory to Sierens' claim of knowledge of the true boundary and permissive use.

The testimony indicates that through the years the occupants of the Frankenreider property have maintained and used the driveway and shed without the permission of the Sierenses because they were unaware of the true boundary between the Frankenreider and Sierens properties until 1989. Accordingly, we find that Frankenreider has shown the performance of physical acts of possession of the homestead frontage which were actual, open and notorious, continuous, adverse and under a claim of title adverse to Sierens for the

statutory 20-year period. Thus, we hold that the trial court's finding that Frankenreider proved the elements of adverse possession with respect to the homestead parcel by clear and convincing evidence was not against the manifest weight of the evidence.

As indicated, the trial court found that Frankenreider failed to establish adverse possession of the north and south strips. Frankenreider contends in his counterappeal that he proved the elements for adverse possession of the north and south strips by clear and convincing evidence as well.

■ A party claiming adverse possession of a parcel of property has the burden of establishing the boundaries of such property with reasonable certainty. (*Schwartz v. Piper* (1954), 4 Ill. 2d 488, 493, 122 N.E.2d 535, 538.) However, the possibility that Frankenreider did not cultivate "every square foot" of the property does not necessarily defeat his claim of adverse possession. (See *Hunsley v. Valter* (1958), 12 Ill. 2d 608, 615, 147 N.E.2d 356, 360.) The acts necessary to accomplish adverse possession may vary depending on the nature and potential uses of the property, and cultivation may be a sufficient act of dominion for establishing ownership by adverse possession. (*Hunsley*, 12 Ill. 2d at 614, 147 N.E.2d at 359.) Following the foregoing principles, we find that Frankenreider has established the boundaries of the property which he claims by adverse possession with reasonable certainty and that he proved the elements necessary to establish ownership of the north and south strips by adverse possession.

Sierens claims that Frankenreider failed to establish the exact location of the fence which formerly ran through the north and south strips and that, therefore, Frankenreider failed to establish the western boundary to the property which he claims by adverse possession. However, the location of the fenceline is of little relevance to the location of the boundary because Frankenreider is claiming ownership of the entire strip of property between the east township right-of-way line and the section line dividing sections 25 and 26. Thus, the western boundary to the land claimed by Frankenreider is the east township right of way line, not the fenceline.

Surveyor Kevin Wallace testified that the east right-of-way line is approximately the line of power poles. The east township road right-of-way line is the western boundary of both the homestead frontage and the north and south strips, and by implication, the trial court found that Frankenreider established the location of the right of way line in deciding ownership of the homestead frontage. Consequently, Frankenreider established the western boundary of the disputed property with reasonable certainty.

Frankenreider also argues that his predecessors exercised dominion over most of the north and south strips, which are bounded by the true section line and the public right of way line, for the statutory 20-year period. We agree.

The record establishes that since the 1930's the occupiers of the Frankenreider property have replaced and maintained the fence that ran through the north and south strips along the line of utility poles, dug the ditch that runs along the east side of the township road, farmed as close as possible to the fence before Gene Taets removed it in the early 1970's and farmed as close as possible to the line of utility poles after the removal of the fence. Further, the court stated that "I don't have any question [that] *** the Taets farmed that [property] *** as far as they could through the thirties, the forties and fifties and sixties ***." Thus, we find that Frankenreider proved sufficient acts of dominion to support a claim of adverse possession of the north and south strips by clear and convincing evidence. See *Cobb v. Nagele* (1993), 242 Ill. App. 3d 975, 978-79, 611 N.E.2d 599, 601-02.

Sierens argues that under Illinois law, the use of vacant, unenclosed land by someone other than the owner is presumed to be permissive. (*Moroe v. Shrake* (1941), 376 Ill. 253, 33 N.E.2d 459.) This rule is inapplicable to the present case. The disputed strip has been farmed, fenced and maintained, and simply cannot be characterized as vacant and unenclosed land.

Since the record clearly establishes the boundaries to the disputed property and sufficient continuous acts to support a claim of adverse possession, the dispositive issue in this case is whether the testimony clearly determined the portion of the disputed north and south strips possessed by Frankenreider's predecessors, and further, whether such portion was sufficient to support a finding of adverse possession of the entire strips. The trial court stated this question as "whether the *** acts which are clearly detrimental to ownership interest *** occur[ed] within this fifteen to twenty four [foot] strip of land or did it [*sic*] not."

We find that the location of the fenceline is relevant with regard to the extent to which Frankenreider exercised dominion over the north and south strips prior to removal of the fence. The north and south strips range from 14 to 24 feet in width. Sierens argues that since there was testimony that the fence "zig zagg[ed]" and that the testimony estimating the distance between the fenceline and the utility poles ranged from one to three feet, Frankenreider failed to establish the location of the former fenceline. However, both Raymond Taets and Donald Nelson testified that the fence ran about one

foot to the east of (inside) the line of utility poles. Gene Taets testified that the fence ran about two or three feet to the east of the line of utility poles. Consequently, the evidence is clear and unequivocal that Frankenreider's predecessors cultivated and fenced the north and south strips to within three feet of the western boundary in excess of the statutory 20-year period. Thus, the trial court's finding that Frankenreider had not met his burden of proving adverse possession of the north and south strips was against the manifest weight of the evidence.

In sum, during the past 50 to 60 years, the owners of the Frankenreider property have cultivated the vast majority of the north and south strips of the disputed parcel. Further, Frankenreider's predecessors have fenced the north and south strips, maintained the fence and later removed the fence. All of the foregoing acts appear to have been done under a perceived ownership of the property by Frankenreider's predecessors. As previously stated, the tenants of the Frankenreider property did not need to cultivate every square foot of the disputed strip to acquire it by adverse possession, and cultivation and fencing are acts consistent with the nature and use of the property. (*Hunsley*, 12 Ill. 2d at 614-15, 147 N.E.2d at 359-60.) Sierens did nothing to vindicate her rights or assert ownership over the property until 1989. Therefore, Frankenreider has proved by clear and convincing evidence, that his possession of the entire disputed strip was actual, exclusive, continuous, open and notorious, adverse and under a claim of right. See *Ewald v. Horenberger* (1976), 37 Ill. App. 3d 348, 345 N.E.2d 524 (reversing trial court's judgment that plaintiff failed to establish ownership through adverse possession where plaintiff farmed and fenced disputed property).

In light of the foregoing, that part of the order of the circuit court of Henry County granting Frankenreider title to the homestead parcel frontage is affirmed, and that part of the order finding insufficient evidence to establish adverse possession of the north and south strips is reversed and is remanded with directions to enter judgement for Frankenreider as to the north and south strips.

Affirmed in part; reversed in part and remanded with directions.

STOUDER and McCUSKEY, JJ., concur.