740 P.2d 1186

**K.O. BROWN, a/k/a Kenneth O. Brown, a single person, Plaintiff-Counter-Defendant-Appellee,**

**v.**

**James GREIG and Cathy Greig, his wife, Defendants-Counter-Claimants-Appellants.**

**No. 9326.**

Court of Appeals of New Mexico.

July 9, 1987.

Certiorari Denied Aug. 14, 1987.

Sumner S. Koch, John F. McCarthy, Jr., White, Koch, Kelly & McCarthy, P.A., Santa Fe, for plaintiff-counter-defendant-appellee.

Mark Hirsch, Albuquerque, for defendants-counter-claimants-appellants.

Gerald B. Richardson, Sp. Ass't Atty. Gen., Taxation and Revenue Dept., Santa Fe, for amicus curiae New Mexico Taxation and Revenue Dept.

## OPINION

ALARID, Judge.

Defendants appeal from a judgment in a quiet title action invalidating their acquisition by tax sale of certain properties located in Taos County, New Mexico. We affirm.

### BACKGROUND AND PROCEEDINGS

The facts of this case can best be reported by listing a chronology of events.

In February 1972, Brown (plaintiff-appellee) and Martin purchased some 1100 acres of land in Taos County, New Mexico, from Weimer by contract of sale. In July, Brown and Martin subdivided a portion of the property into 20 lots, naming the subdivision Tierra de los Rios Subdivision. Again in September, Brown and Martin subdivided a portion of the remaining land and, likewise, called it Tierra de los Rios. Plats for both subdivisions were filed of record in July and October 1972, respectively. For administrative convenience, the Taos County Assessor distinguished between them by calling the first subdivision Block A and the second Block B. As lots were sold off, the assessor's office, upon notification of sale, would reduce the master tract according to the lots sold. Tax assessment for unsold property was mailed to Martin, in Taos, who would in turn mail it to Brown for payment. There was no double assessment because lot owners of record were assessed for their properties as of the time of sale. This appeal concerns lots 16, 17 and 18 of Block A.

Brown and Martin sold Overton lot 16 in June 1973, and lots 17 and 18 the following November. Contracts for sale and warranty deeds were held in escrow by the servicing bank until Overton paid off the contracts in 1978. Neither the contracts nor the warranty deeds were ever recorded in Taos County. The only formal documentation of record showing the properties in or out of Overton was a right-of-way easement for all three lots granted to Kit Carson Electric Cooperative by Overton in 1977.

In March 1977, Brown and Martin dissolved their Tierra de los Rios partnership, and Martin executed a quitclaim deed to Brown and his wife for all the remaining property in the original master tract in 1979. That deed was recorded in Taos County in 1980. Meanwhile, in July and December 1978, Overton completed payments on lots 17 and 18, and lot 16, respectively. The bank mailed the warranty deeds to Overton, but they were never recorded.

Also, in 1978, Brown received a 1978 tax bill for lots 16 and 17 at his Dallas, Texas, address from the Taos County Treasurer. Upon receipt, he telephoned Senaida Vigil, the Taos County Reassessment Officer, and informed her that he no longer owned the lots and would not be responsible for the taxes. Vigil requested that he return the notice to her. Upon receiving it, Vigil wrote on the notice, "These are Lots 16 and 17 of Blk A[:] If these lots have been sold please let me know and I will make the correct change of ownership[.] Thanks[,] Senaida R[.] Vigil[,] Reassessment Office Taos County Court House".

By return mail, Vigil received the same tax notice, presumably from Brown, with an arrow drawn from her notation to the bottom of the page where it was written, again presumably by Brown: "Dr. Ken Overton, 3219 MacArthur Blvd., Irving, TX 75062." The same written events did not occur with lot 18.

Thereafter, beginning in 1979, tax notices on lots 16, 17 and 18 were mailed in the name of Dr. Ken Overton. Record property cards kept by the Assessor's Office, and bearing the appropriate code numbers for those particular lots, were updated to indicate Overton as record owner of the lots. Copies of the tax bills indicate that 1979 property taxes were paid.

In September 1980, Brown repurchased lots 16, 17 and 18 from Overton. The sale was completed by a real estate mortgage and warranty deed from Overton to Brown. Neither document was recorded until November 8, 1984. Paragraph 6(a) of the agreement of sale provided that general real estate taxes for the current year would be prorated between the parties as of the date immediately preceding the clos-

ing date. Apparently neither party adhered to that provision in their agreement, nor did Brown declare himself with the county assessor as the new owner of the property.

On July 15, 1983, the Taos County Assessor provided the New Mexico Taxation and Revenue Department with the Taos County 1980 delinquent tax list. Included was Overton's name as property owner for lots 16, 17 and 18 of Tierra de los Rios. In October, the Department mailed a notice of delinquency to Overton at his last known address. After receiving no response, the Department sent Overton, by certified, return receipt requested mail, a notice of sale for delinquent taxes. The notice was returned to the Department by postal authorities marked "refused." After appropriate notice and publication, the subject lots were sold in May 1984 at public auction to the Greigs (defendants-appellants). Pursuant to the sale, deeds to all three lots were issued to the Greigs, who recorded them in July 1984.

Brown learned of the tax sale through friends during the summer of 1984, recorded his deeds to the property in November, and brought an action to quiet title in May 1985. The trial court found that he was record owner of the property from 1972 to 1984, and held the tax sale invalid. Defendants appealed from the judgment.

This appeal requires us to determine whether the trial court erred in (1) finding that plaintiff was entitled to notice of the pending tax sale as record owner of the land, pursuant to NMSA 1978, Section 7–38–66(A) (Repl.Pamp.1983) of the Property Tax Code; and (2) invalidating the sale of land to defendants.

Because of the general importance of the issues raised, we invited amicus curiae. *See* 26 SBB 470. The New Mexico Taxation and Revenue Department filed an amicus brief and, with the consent of the parties and the court, participated at oral argument. We express our gratitude to the Taxation and Revenue Department for its valuable assistance.

## DISCUSSION

Preliminarily, we address Brown's contention that the Greigs should be prevented from arguing waiver and estoppel on appeal because it was not preserved at trial. We are not persuaded. The theory of the Greigs' case, both at trial and on appeal, was that Brown waived his right to notice of the tax sale due to his conduct and express words. We cannot ignore the obvious, and we shall proceed to address the issues on appeal.

The essence of Brown's argument on appeal is that even though Brown was not the "assessed owner" on the 1980 tax rolls, he was nonetheless the actual and record owner at and before the time of the tax sale, thus entitling him to notice of the sale.

The Property Tax Code, NMSA 1978, Sections 7–35–1 to 7–38–93 (Repl. Pamp.1983 and Cum.Supp.1985), must be read and construed in its entirety. *Cano v. Lovato*, 105 N.M. 522, 734 P.2d 762 (Ct. App.1986). The Code does not distinguish between owners of property for taxation purposes, nor does it place owners in different categories for assessment purposes. While Section 7–38–51 does provide for one other than an owner of property to be notified of delinquent taxes, a county treasurer can only know to do so if a property owner has made that information of record. An owner of property is defined by Section 7–35–2 as a person in whom "any title" to property is vested. Brown retained legal title to the lots until 1978, when Overton satisfied the contract. Although trial testimony indicated that Brown paid property taxes on the subject lots until 1979, the record is silent as to whether he was required to do so under the terms of his contract with Overton. At any rate, by not recording any documentation of the 1973 sale to Overton, Brown remained owner of record and would have been entitled to notice of any matter which would have affected his property interest prior to 1979. *See Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *see also Macaron v. Associates Capital Servs. Corp.*, 105 N.M. 380, 733 P.2d 11 (Ct.App.1987) (notice by

publication only, which is in statutory compliance, does not provide a mortgagee of real property with constitutionally adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes).

The question remains, however, whether Brown continued as record owner of the properties once he orally notified the Taos County Assessor that he no longer owned the lots and would not be responsible for the property taxes. Did that notice constitute a waiver of his right to be notified of the delinquency prior to the tax sale? We believe that it did not.

We cannot ignore the fact that Overton never recorded his deeds, that Brown repurchased the properties, and that no documentation, other than the grant of easement, appeared of record which would have indicated Overton's interest in the property.

■ Waiver is the intentional relinquishment or abandonment of a known right, and the act of waiver may be evidenced by conduct as well as by express words. *Cooper v. Albuquerque City Comm'n*, 85 N.M. 786, 518 P.2d 275 (1974). We agree with the trial court's conclusion of law that Brown's direction to the assessor to mail tax notices for lots 16 and 17 to Overton did not waive the requirement of notice of sale to Brown. Brown requested that the assessor notify a person other than himself; he informed her that he had no further interest in the land and would not be responsible for the taxes. The fact that no written documentation appears in the tax records regarding the same instructions for lot 18 does not preclude us from making the reasonable inference that a similar conversation occurred regarding that lot. Indeed, the trial court's remarks show that the court believed the same thing. Assessment notices were mailed to Overton beginning with tax year 1979; and they were paid, presumably by Overton.

■ We recognize that the assessor may have relied on Brown's request to assess Overton for the taxes, but such reliance is misplaced. It does not excuse the assessor from statutory requirements any more than it does owners of property who rely on the law to receive notice of tax sales, even though a property owner has an affirmative duty to declare his property. *State ex rel. Property Appraisal Dep't v. Sierra Life Ins. Co.*, 90 N.M. 268, 562 P.2d 829 (1977). Section 7–38–66(A) provides:

A. At least twenty days but not more than thirty days before the date of the sale for delinquent taxes, the division shall notify by certified mail, return receipt requested, to the address as shown on the most recent property tax schedule, *each property owner* whose real property will be sold that his real property will be sold to satisfy delinquent taxes unless:

(1) all delinquent taxes, penalties, interest and costs due are paid by the date of the sale; or

(2) an installment agreement for payment of all delinquent taxes, penalties, interest and costs due is entered into with the division by the date of sale in accordance with Section 7–38–68 NMSA 1978. [Emphasis added.]

Statutes are to be given their plain meaning in order to facilitate their operation and achieve their goals. *Mutz v. Municipal Boundary Comm'n*, 101 N.M. 694, 688 P.2d 12 (1984). In keeping with the intent of the legislature to notify "each property owner" of an impending sale of his property, it is implicit that the legislature also intended that holders of record title be notified of the same thing. As holder of record title, Brown should have been given notice of the sale pursuant to Section 7–38–66(A). No record, other than the property cards, was ever changed to indicate that Brown had divested himself of his ownership in the property. At all times prior to the tax sale, Brown was record owner of title. It is irrelevant that he in fact did not hold legal title during the time Overton owned the property, because Overton never assessed the taxes against himself; it was Brown who gave the information to the assessor. We agree with the trial court that the Taxation and Revenue Department failed to make a diligent search of the

record in determining the person or persons entitled to notice.

 Due process requires that the state must provide notice of sale to parties whose interest in property would be affected by the sale, as long as that information is reasonably ascertainable. *See Mennonite Board of Missions v. Adams; Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Cano v. Lovato; Macaron v. Associates Capital Servs. Corp.* Because there was no formal documentation of ownership into or out of Overton and Brown was listed on the assessor's record property cards as a former owner, we conclude that Brown's name and address were reasonably ascertainable and he was entitled to notice under Section 7–38–66(A).

## CONCLUSION

We hold that Brown did not waive his right to notice when he disclaimed any interest in the property for purposes of taxation between 1979 and 1980; that the Department of Taxation and Revenue did not conduct a diligent search of the record to notify him of the impending tax sale; and that the tax sale to defendants Grieg was invalid. The judgment of the trial court is affirmed. No costs are awarded.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.