817 P.2d 721

Virginia P. UHDEN, Plaintiff–Appellant,

v.

The NEW MEXICO OIL CONSERVA-
TION COMMISSION and Amoco Pro-
duction Company, Defendants–Appel-
lees,

and

Meridian Oil, Inc., Intervenor–Appellee.

No. 19281.

Supreme Court of New Mexico.

Sept. 24, 1991.

Hinkle, Cox, Eaton, Coffield & Hensley,
James Bruce, Albuquerque, for appellant.

Robert G. Stovall, Santa Fe, for appellee
Oil Com'n.

Campbell & Black, William F. Carr, San-
ta Fe, for appellee Amoco Production.

W. Thomas Kellahin, Santa Fe, for appel-
lee Meridian Oil.

### OPINION

FRANCHINI, Justice.

On motion for rehearing, the opinion previously filed is hereby withdrawn and the opinion filed this date is substituted therefor.

This case comes before us on appeal from a district court judgment which affirmed a decision of the New Mexico Oil Conservation Commission. The issues presented are whether the proceeding was adjudicatory or rulemaking, and whether the royalty interests reserved by the lessor of an oil and gas estate were materially affected by a state proceeding so as to entitle the lessor to actual notice of the proceedings. We hold that the proceeding was adjudicatory and the lessor was so entitled under due process requirements of the New Mexico and United States Constitutions. Accordingly, we reverse.

Appellant Uhden is the owner in fee of an oil and gas estate in San Juan County. She transferred certain rights by lease to appellee Amoco Production Company (Amoco) in 1978. The lease included a pooling clause. Amoco drilled the Cahn Well, spaced on 160 acres. Uhden executed a division order with Amoco which entitled her to a royalty interest of 6.25 percent of production from the Cahn Well. Amoco began to remit royalty payments pursuant to the division order.

In late 1983, Amoco filed an application with the New Mexico Oil Conservation Commission (the Commission) seeking an increase in well spacing from 160 to 320 acres. The Cahn Well and Uhden's oil and gas interests were included in the area covered by Amoco's application. A hearing date was set to consider the application. At the time of application, NMSA 1978, Section 70–2–7 provided that notice of the Commission hearings and proceedings shall be by personal service or by publication.[1] It is undisputed that Amoco had knowledge of Uhden's mailing address, for Amoco had been sending royalty checks to Uhden.

Nevertheless, Amoco chose to provide notice by publication only. After a hearing in January 1984, the Commission issued Order No. R–7588 which granted temporary approval of Amoco's application. Uhden did not attend or participate in the hearing.

A further hearing on the application was held in February 1986. The Commission issued Order No. R–7588–A, which granted final and permanent approval of Amoco's application. As before, Uhden was given notice only by publication. Uhden neither attended nor participated in the hearing. The result of the hearing had the effect of reducing Uhden's royalty interest from 6.25 percent to 3.125 percent of production. After Order No. R–7588 was issued, Amoco continued to pay royalties to Uhden based on 160 acre spacing. Amoco finally notified Uhden of the spacing increase in May 1986, made demand upon her for an overpayment of royalties, and retained all royalties due Uhden since then, claiming the right of offset. The asserted overpayment was approximately $132,000.00. Uhden subsequently filed her application with the Commission, designated Case No. 9129, seeking relief from the Commission Order Nos. R–7588 and R–7588–A based in part on her lack of notice. Her application was denied by the Commission by Order No. R–8653, dated May 11, 1988. Uhden unsuccessfully sought relief through the New Mexico Oil Conservation Commission appeal process. She then appealed to the district court, which upheld the orders of the Commission. This appeal followed.

Uhden argues that the lack of actual notice of a pending state proceeding deprived her of property without due process of law, in contravention of article II, section 18 of the New Mexico Constitution and the fourteenth amendment to the United States Constitution. We believe that this argument has a firm basis in New Mexico law, the law of other jurisdictions, and in the rulings of the United States Supreme Court.

---

1. NMSA 1978, § 70–2–7 was amended in 1987 to allow the Commission to prescribe by rule its rules of order or procedure. The current rule, New Mexico Oil Conservation Division Rule 1204, provides for notice by publication.

First, this was an adjudicatory and not a rulemaking proceeding. Under statewide rules, all gas wells in San Juan County are spaced on 160 acres. *See* N.M. Oil Conservation Rules 104(B)(2)(a) and 104(c)(3)(a). These rules are rules of general application, and are not based upon engineering and geological conditions in a particular reservoir. However, oil and gas interest owners, such as Amoco, can apply to the Commission to increase the spacing required by statewide rules. In this case, this was done by application and hearings where the applicant presented witnesses and evidence regarding the engineering and geological properties of this particular reservoir. After the hearings, the Commission entered an order based upon findings of fact and conclusions of law. This order was not of general application, but rather pertained to a limited area. The persons affected were limited in number and identifiable, and the order had an immediate effect on Uhden. Additionally, a spacing order can only be modified upon substantial evidence showing a change of condition or change in knowledge of conditions, arising since the prior spacing rule was instituted. *See Phillips Petroleum Co. v. Corporation Comm'n*, 461 P.2d 597 (Okla. 1969). We find that this determination was adjudicative rather than rulemaking. *See Harry R. Carlisle Trust v. Cotton Petroleum Corp.*, 732 P.2d 438 (Okla.1987).

Second, Uhden clearly has a property right in the oil and gas lease. "In this state a grant or reservation of the underlying oil and gas, or royalty rights provided for in a mineral lease as commonly used in this state, is a grant or reservation of real property. Mineral royalty retained or reserved in a conveyance of land is itself real property." *Duvall v. Stone*, 54 N.M. 27, 32, 213 P.2d 212, 215 (1949) (citation omitted). The appellees contend that Uhden's property right is somehow diminished by her lessor/lessee relationship with Amoco. They argue that the voluntary pooling clause in her lease, not the state's action in approving the 320 acre spacing pool, caused the reduction of her royalty interest. Pooling is defined as "the bringing together of small tracts sufficient for the

granting of a well permit under applicable spacing rules." 8 H. Williams and C. Meyers, *Oil and Gas Law* 727 (1987). Without the subject spacing orders, Amoco could never have pooled leases to form 320 acre well units. The Commission's order authorizing 320 acre spacing was a condition precedent to pooling tracts to form a 320 acre well unit. *See Gulfstream Petroleum Corp. v. Layden*, 632 P.2d 376 (Okla.1981) (entry of a spacing order is a jurisdictional prerequisite to pooling). Thus, it was the spacing order, and not the pooling clause, which harmed Uhden. Pooling is therefore immaterial under these circumstances, and the spacing order deprived Uhden of a property interest. Uhden's property right was worthy of constitutional protection, regardless of the fact that she had contractually granted Amoco the right to extract oil and gas from the estate.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657. The Court also said that "[b]ut when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657. Significantly, the Court refused to sanction notice by publication to those whose identity and whereabouts were ascertainable from sources at hand.

The due process requirements of fairness and reasonableness as stated in *Mullane* are echoed in the case law of this state. Administrative proceedings must conform to fundamental principles of justice and the requirements of due process of law. A litigant must be given a full opportunity to be heard with all rights related thereto. The essence of justice is largely procedural.

Procedural fairness and regularity are of the indispensable essence of liberty. *In re Miller*, 88 N.M. 492, 496, 542 P.2d 1182, 1188 (Ct.App.1975) (citations omitted), *rev'd on other grounds*, 89 N.M. 547, 555 P.2d 142 (1976).

Similarly, it has been held that due process requires the state to provide notice of a tax sale to parties whose interest in property would be affected by the sale, as long as the names and addresses of such parties are "reasonably ascertainable." *Brown v. Greig*, 106 N.M. 202, 206, 740 P.2d 1186, 1190 (Ct.App.), *cert. denied*, 106 N.M. 174, 740 P.2d 1158 (1987). The court of appeals also has held that when the state has reason to know that the owner of real property subject to delinquent tax sale is deceased, then reasonable notice of the proposed tax sale must be given to decedent's personal representative where one has been appointed and where record of that fact is reasonably ascertainable. *Fulton v. Cornelius*, 107 N.M. 362, 366, 758 P.2d 312, 316 (Ct.App.1988).

We are also persuaded by a line of cases from Oklahoma, a fellow oil and gas producing state. The facts of *Cravens v. Corporation Commission*, 613 P.2d 442 (Okla. 1980), *cert. denied*, 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981), are similar to those of the case before us. An application was made for an increase in well spacing to the state commission. Although the applicants knew the identity and whereabouts of a well operator whose interests would be affected by a change in spacing, they made no attempt to provide actual notice. The applicant complied with the relevant statute and rule, which prescribed notice by publication of a spacing proceeding. The court held that when the names and addresses of affected parties are known, or are easily ascertainable by the exercise of diligence, notice by publication does not satisfy constitutional due process requirements. *Id.* at 444. Similar results were reached in *Union Texas Petroleum v. Corporation Commission*, 651 P.2d 652 (Okla. 1981), *cert. denied*, 459 U.S. 837, 103 S.Ct. 82, 74 L.Ed.2d 78 (1982), and *Louthan v. Amoco Production Co.*, 652 P.2d 308 (Okla.Ct.App.1982).

■ In all of the foregoing cases, great emphasis is placed on whether the identity and whereabouts of the person entitled to notice are reasonably ascertainable. In this case, Uhden's identity and whereabouts were known to Amoco, the party who filed the spacing application. On these facts, we hold that if a party's identity and whereabouts are known or could be ascertained through due diligence, the due process clause of the New Mexico and United States Constitutions requires the party who filed a spacing application to provide notice of the pending proceeding by personal service to such parties whose property rights may be affected as a result. Thus, the Commission Order Nos. R–7588 and No. R–7588–A are hereby void as to Uhden. We do find that Uhden eventually had notice and an opportunity to be heard on the issue of spacing. Her Case No. 9129, which requested the Commission to vacate the 320 acre spacing, resulted in Order No. R–8653, dated May 11, 1988. An increase in spacing is effective from the date of such order. *See* NMSA 1978, § 70–2–18(A) (Repl.Pamp.1987). Therefore, we find the 320 acre spacing effective to Uhden as of May 11, 1988. Finally, the principles set forth in this opinion are applicable to Uhden and to the Commission cases filed after the date of the filing of this opinion. The judgment of the district court is reversed and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM and BACA, JJ., concur.

MONTGOMERY, J., dissents.

MONTGOMERY, Justice (dissenting).

There is much in the majority opinion with which I certainly agree. The lofty principles of due process—of a property owner's entitlement to notice and an opportunity to be heard before she can be deprived of her property rights—are of course thoroughly ingrained in our state and federal constitutional jurisprudence. Likewise, the proposition that the royalty

interest of a lessor under an oil and gas lease is a property right accorded constitutional protection under New Mexico law cannot be questioned. My quarrel with the majority opinion boils down to my flat disagreement with this simple statement: "The result of the hearing had the effect of reducing Uhden's royalty interest from 6.25 percent to 3.125 percent of production."

The purpose of the hearing before the Commission was to determine the appropriate size of a proration unit in the Cedar Hills–Fruitland Basal Coal Gas Pool in northwestern New Mexico, in which Amoco operated several wells and in which Uhden's mineral interests were located. Under NMSA 1978, Section 70–2–17(B) (Repl. Pamp.1987), a "proration unit" is defined as "the area that can be efficiently and economically drained and developed by one well. . . ."

Determining the size of a proration unit has nothing to do with the ownership of property rights in the field in which the unit is located. The area which can be "efficiently and economically drained" by a single well is a function of the physical characteristics of the reservoir into which the well is to be drilled. Prescribing the size of a proration unit is a form of land-use regulation carried out by the Commission that depends entirely on the physical or geologic characteristics of the region and only affects the various property rights within the region in the same way as any other land-use regulation affects property owners within the area regulated. It is, if you will, a form of "rulemaking," performed by the Commission in the discharge of its duties to prevent waste and protect correlative rights. *See id.;* §§ 70–2–11, 70–2–12(B)(10).

When the Commission issued Order No. R–7588–A, Uhden's royalty interest was unaffected. In order to affect her interest, a further step was necessary—namely, the pooling of her interest with a similar interest in the 320–acre tract surrounding the Cahn Well. That further step was taken; but it was Amoco, not the Commission, that took it. Amoco took it because Amoco was authorized by the lease with Uhden to take it. As the majority notes, the lease contained a voluntary pooling clause under which Amoco was authorized to pool Uhden's royalty interest with others to form production units of not more than 640 acres.

It is true that the Commission's order authorizing 320–acre spacing was a condition precedent to Amoco's pooling of Uhden's interest in forming a 320–acre unit. However, the majority's conclusion that "it was the spacing order, and not the pooling clause which harmed Uhden" does not follow. Probably *every* zoning and other land-use regulation is a condition precedent to action taken by one landowner consistent with the regulation that may in some way adversely affect another landowner subject to the same regulation. But that does not mean that the *regulation* causes the adverse effect; if the adversely affected landowner has authorized the landowner taking the action to do so, the mere fact that the action conforms with an applicable land-use regulation does not make the regulation the cause of the adversely affected owner's harm.

Had Uhden owned the royalty interest on an undivided one-half interest in the entire 320 acres in the new unit, the Commission's spacing order would have had no effect on her cash flow. She would have continued to receive 6.25% of the proceeds from the single well allowed on the new unit. As it was, she had to share her 6.25% interest with the royalty owners of the other mineral interests pooled to form the new unit, but in return she received the right to receive a share of *their* royalty interest in the gas subject to their lease.

I realize that the trade-off just mentioned is small consolation to Uhden and that in a very real sense, at least in terms of her current cash flow, her rights have been reduced significantly. However, that is the result not of the Commission's spacing order, but of Amoco's decision to exercise its right under the lease to effect a voluntary pooling. I believe that the notoriously slippery distinction between rulemaking and adjudication is not particularly

helpful in this case and that, if the Commission's action *had* reduced Uhden's interest, then the constitutional concerns in the majority opinion would be well taken—whether or not the action constituted "rulemaking" rather than "adjudication." However, I do not think those concerns are implicated when the lessee exercises the right the lessor has given it in the lease to pool the leasehold and the associated royalty with other interests to form a new unit.

The majority having concluded otherwise, I respectfully dissent.