845 P.2d 1262

**Bob D. YADON, Claimant–Appellant,**

**v.**

**QUINOCO PETROLEUM, INC., and Liberty Mutual Insurance Company, Respondents–Appellees.**

**No. 13180.**

Court of Appeals of New Mexico.

Dec. 8, 1992.

Certiorari Denied Jan. 15, 1993.

809

Cynthia A. Fry, Albuquerque, for claimant-appellant.

Charles E. Stuckey, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for respondents-appellees.

## OPINION

HARTZ, Judge.

Bob D. Yadon ("Worker") appeals from a decision by the Workers' Compensation

Judge ("WCJ") denying him benefits. Worker's principal argument is that the WCJ abused her discretion and violated Worker's constitutional right to due process when she converted a summary judgment hearing to a trial on the merits without proper notice and failed to grant Worker a continuance that she had promised him. Worker argues in the alternative that if this court views the WCJ's order as a summary judgment, we should reverse the order because there were genuine issues of material fact. We affirm. Because Worker suffered no prejudice from any impropriety in the WCJ's treatment of the proceeding as a trial and because the WCJ acted within her discretion in denying a continuance, we need not reach Worker's alternative argument.

## I. BACKGROUND

On July 12, 1990, Worker filed an Amended Claim for Workers' Compensation Benefits based on an alleged accident occurring on April 3, 1989. After a mediation conference the mediator issued a Recommended Resolution on August 29, 1990, stating, "Claimant is not entitled to benefits at this time because he failed to establish a causal connection between an on the job injury and his present disability as a probability by expert testimony of a health care provider." Worker rejected the Recommended Resolution because "I believe my medical condition was due to breathing of $H_2S$ [hydrogen sulfide] gases over the years I worked for Quinoco Pet Inc." On February 14, 1991, the Respondents, Quinoco Petroleum, Inc. and Liberty Mutual Insurance Company (jointly referred to as "Employer"), filed an answer including the following two affirmative defenses:

5. A causal link between disability and accident has not been shown to a reasonable medical probability.

6. Claimant's treating physician, Dr. James Vincent, in his Physical Capacities Evaluation Form, states that he is unable to relate [Worker's] conditions or complaints to a work related injury, and that

the disease which [Worker] is suffering from is *not* work related.

On March 26, 1991, Employer took Worker's deposition in Sidney, Montana. Employer also took the deposition of Dr. Donald Cooper in Sidney on the same day. On March 27, 1991, Employer took the deposition of Dr. Vincent in Billings, Montana. Worker, who lived in Montana and received ample notice, did not attend Dr. Vincent's deposition.

On April 3, 1991, Worker and Employer filed a Pre-trial Order with the Workers' Compensation Administration. The order stated that among the issues remaining to be tried were: "3. Whether there is a causal connection between disability and occurrence." and "4. Whether the disease which [Worker] is suffering from is work related." The parties estimated that the trial would take three hours. The order set the trial for April 15, 1991. Worker listed Carol J. Yadon, his wife, as his sole witness. Employer listed Dr. Cooper and Dr. Vincent, both by deposition, and Worker. Worker's list of exhibits named reports by Dr. Vincent, Dr. Cooper, and Pamela Bailey, a Montana attorney who had represented Worker. Employer listed as exhibits the depositions of Drs. Cooper and Vincent, medical records and forms, and a report of accident.

On April 5, 1991, Employer moved for summary judgment on the ground that Worker had failed "to establish that his disability is a natural and direct result of his employment as a medical probability" and that the claim was barred by untimely notice and untimely filing of the claim. Employer's request for setting on the motion recited that a formal hearing had already been set for April 15, 1991, and requested 15 minutes for the summary judgment hearing. The notice of hearing on the motion for summary judgment set the hearing at the same time as the prior scheduled trial, with three hours allocated for the hearing. Nothing in the notice indicated that the trial was being postponed. Nor would it be reasonable to infer

from the notice of hearing on the summary judgment motion that the trial was indefinitely postponed. On the contrary, because Worker and his wife would be coming from Montana, it would not make sense to postpone the trial to a later date, necessitating an additional long-distance trip for Worker and his wife.

Worker attended the April 15 proceedings without counsel representing him. (Worker stated that he had sought to obtain counsel but the attorney he had consulted was unwilling to represent him without better evidence on causation.) The proceeding began with the hearing on Employer's motion for summary judgment. With respect to the causation issue, counsel for Employer read from pertinent portions of the depositions of Drs. Cooper and Vincent. After hearing the recitation of evidence and the argument of Worker and Employer's counsel, the WCJ indicated her belief that the motion for summary judgment was meritorious. She offered Worker a continuance until the next afternoon, however, so that Worker could go through the depositions to see whether there was testimony favorable to his case and so that Worker would have an opportunity to retain counsel. The WCJ told Worker that if he could show her "even just a little bit of evidence" establishing causation, then she would find an issue of fact and they would go to a full trial.

Shortly after the proceeding resumed on the following day, the WCJ repeated her concern that the required evidence of causation was absent from the depositions. She then added, "If I denied the [summary judgment] motion, we would go forward with the trial and I don't think you have any other evidence to offer me at the trial." Worker's wife responded that she thought that she and Worker could get evidence. But the WCJ noted that the trial would be held then, not later. The day before, when Worker's wife had asked about getting more evidence, the WCJ informed her that there needed to be a point when collecting evidence ended.

After the parties had presented all their contentions regarding the issues of causation and notice, the WCJ stated: "Basically what we've done * * * is we've had an evidentiary hearing." She said that she would treat Employer's motion for summary judgment as a motion to dismiss and would grant the motion. Given that the WCJ entered findings and conclusions, it is apparent that she was referring to dismissal pursuant to SCRA 1986, 1–041(B) (Repl.1992) (dismissal at close of plaintiff's case). We first discuss whether the WCJ improperly converted the motion hearing into a trial and then discuss whether the WCJ improperly reneged on a promise to grant Worker a continuance.

## II. DISCUSSION

### A. *Conversion of Motion Hearing to Trial*

■■■ Worker contends that his constitutional right to due process was violated by the "conversion" of the proceeding from a hearing on a motion for summary judgment to a trial. We disagree.

On its face, Worker's contention appears correct. As Judge Donnelly's dissent points out, the WCJ dispensed with the formalities of a trial. The WCJ should have proceeded by first stating that she denied the motion for summary judgment and then asking the parties if they wished to present opening statements and offer evidence with respect to the trial on the merits. Nevertheless, the failure to follow such procedures does not require reversal in this case. Worker was provided a full opportunity to do everything he could have done if the WCJ had proceeded in a formally correct manner. We reach this conclusion based on (1) the statutory requirement that causation be proved by expert medical testimony in workers' compensation litigation, (2) the requirement of the Pre-trial Order that all expert medical testimony be presented through previously designated documentary evidence, and (3) the WCJ's authority to bifurcate issues in this litigation.

NMSA 1978, Section 52–1–28(B) (Repl.Pamp.1991) states:

> In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider * * * testifying within the area of his expertise.

If the trier of fact is not convinced of causation by the expert medical testimony, benefits must be denied. *See Torres v. Kennecott Copper Corp.*, 76 N.M. 623, 417 P.2d 435 (1966); *Perea v. Gorby*, 94 N.M. 325, 610 P.2d 212 (Ct.App.1980).

Worker had ample notice that he would need to be prepared to try the case on April 15 and that a central issue would be whether there was expert medical testimony sufficient to establish causation. The Pre-trial Order listed the expert medical evidence that would be offered at the trial; it consisted solely of depositions of doctors, medical records, and medical reports. All of that evidence was available and presented to the WCJ on April 15 and 16. When the WCJ stated that Worker had no additional evidence on causation, the only response was the statement by Worker's wife that she thought they could get additional evidence. Moreover, the parties thoroughly argued the content and meaning of the medical evidence at the motion hearing. Thus, with respect to the causation issue, the WCJ heard all the evidence and argument that she could have heard at trial. In particular, nothing could be added by sworn witnesses because the Pre–Trial Order did not allow for any live expert testimony.

Of course, there may have been significant additional evidence on such matters as the timeliness of Worker's notice and claim and the extent of his disability. But if one issue at trial may be dispositive, the WCJ has authority to bifurcate the trial and first litigate the possibly dispositive issue. *See* Formal Hearing Rules, N.M. Workers' Compensation Admin. Rule I(A), 184

N.M.Reg. No. 1–18 (June 1989) (Rules of Civil Procedure for district courts apply to hearings before WCJ); SCRA 1986, 1–042(B) (Repl.1992) (trial court may order separate trial of any separate issue); *Ortiz v. New Mexico State Police*, 112 N.M. 249, 252, 814 P.2d 117, 120 (Ct.App.1991); *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) (trial court may sever causation issue). Consequently, once the WCJ decided that Employer was entitled to judgment on the causation issue, the WCJ had no obligation to conduct a formal trial on the other issues.

In short, the WCJ's procedure, although formally incorrect, did not prejudice any rights of Worker in the particular circumstances of this case. Here we had the unusual situation of a dispositive issue being decided on previously designated documentary evidence. A trial of the causation issue would not have looked like a typical trial in any event. We must disregard errors or defects in a proceeding which do not affect the substantial rights of the parties. *El Paso Elec. Co. v. Real Estate Mart, Inc.*, 98 N.M. 570, 574, 651 P.2d 105, 109 (Ct.App.1982). Therefore, we do not reverse on this ground.

### B. *Alleged Promised Continuance*

██ Worker also contends that the WCJ violated his right to due process by first promising a continuance to enable him to re-depose Dr. Vincent and then reneging on that promise. The statement by the WCJ upon which Worker bases this contention was made after Worker complained that Dr. Vincent's deposition testimony was contrary to what the doctor had told Worker privately. (Worker, although given notice, did not attend the deposition of Dr. Vincent.) The WCJ stated:

> Okay, but the problem is we are faced with the evidence that exists right now, and at a trial I would accept the deposition of Dr. Vincent as it's written unless you're going to object to that, and what

you're telling me, you're—you're going to object to that, all I would do is authorize you to take another deposition. So you need to think about what it is you think you could change if you had opportunity to depose the doctor.

We do not interpret the statement by the WCJ as a ruling that grants a continuance. The WCJ spoke conditionally. She said, "All I *would* do * * *." Indeed, in context it appears likely that the WCJ meant to say, "All I *could* do." Also, implicit in the WCJ's statement is that authorization of a new deposition would be conditional on a *meritorious* objection. We find it hard to believe that the WCJ intended to grant relief to Worker simply if Worker made an objection, regardless of the objection's merit. Here, Worker had made no meritorious objection. On the contrary, at the beginning of the hearing on April 15 Worker had not objected to introduction of the deposition testimony. Moreover, Worker's complaint was simply that Dr. Vincent had not testified truthfully. Insofar as Worker's concern was that he was surprised by the deposition testimony, we note that Dr. Vincent's Physical Capacities Evaluation Form, referred to in Employer's answer of February 14, 1991, said that he could not relate Worker's condition to his work. Thus, Worker had ample notice of Dr. Vincent's views. In any event, any surprise from the deposition testimony could have been obviated if Worker had attended the deposition, for which he acknowledged having received notice.

Furthermore, nothing in the record indicates that Worker believed the WCJ to have promised him the opportunity to re-depose Dr. Vincent. Worker never claimed during the proceedings that the WCJ had reneged on a promise.

Finally, and perhaps most importantly, even if the comment by the WCJ could be construed as a promise, we see no denial of due process to Worker arising from a reconsideration of the matter by the WCJ. It is not uncommon for a judge to change a decision on a matter prior to entry of final judgment. Such a change does not infringe on the due process rights of a party when there has been no detrimental reliance by the party on the original decision by the judge. *See Fox v. Doak*, 78 N.M. 743, 438 P.2d 153 (1968) (error cannot be predicated on inconsistencies between judge's oral remarks from the bench and the written decision). In this case Worker claims no such detrimental reliance, nor do we see how there could have been any. Given the notice of the trial and the terms of the Pre-trial Order, Worker was adequately advised of the need to have all pertinent evidence ready for presentation on April 15. We fail to see any way in which Worker could have had additional evidence available on April 16 if the WCJ had clearly stated on April 15 that Worker would not be permitted to re-depose Dr. Vincent.

We note that Worker does not argue that denial of a continuance would have been an abuse of discretion even if the WCJ had not purportedly promised a continuance. Because the dissent addresses that point, however, we express our view that the WCJ did not abuse her discretion in determining that Worker had already received sufficient notice and time to gather and present evidence on causation.

Worker had known of the need to obtain favorable expert medical testimony on causation at least since issuance of the Recommended Resolution, which stated that Worker was not entitled to benefits because he had "failed to establish a causal connection * * * as a probability by expert testimony of a health care provider." This gave Worker more than seven months to prepare for the hearing. That was ample time. Indeed, this court has applauded a district judge (now a member of this court) for taking a workers' compensation case from filing of the claim to judgment in seven months. *Gallegos v. Yeargin Western Constructors*, 104 N.M. 623, 623–24, 725 P.2d 599, 599–600 (Ct.App.1986). Although the dissent here notes that this case was apparently "lost in the system" at one

time, we have no indication that Worker was thereby prejudiced in preparing his case.

We also find that Worker had ample time to prepare for the adverse testimony in the deposition of Dr. Vincent. In its answer two months before trial, Employer asserted that Dr. Vincent was "unable to relate" Worker's condition to his work. Worker received proper notice of the deposition of Dr. Vincent nineteen days before trial but chose not to attend. And the transcript of that deposition was provided to Worker two days before trial. In *El Paso Electric Co.*, we found no abuse of discretion by the trial court in permitting a party to call a witness who was added to the pretrial order only three days before the witness was to testify; we noted that the opposing party was afforded an opportunity to interview the witness over the weekend before trial. Although in *El Paso Electric Co.* the new witness was an expert being substituted for a previously disclosed expert, here we have a witness who had submitted a report months earlier and who had been available for questioning at a deposition almost three weeks earlier. The WCJ acted well within her discretion in ruling that Worker was not entitled to more time to prepare.[1]

Thus, we reject Worker's contention that he was denied due process when the WCJ, after making the statement quoted above, did not later order a continuance to enable Worker to re-depose Dr. Vincent.

## III. CONCLUSION

For the reasons stated above, we affirm the decision of the WCJ.

IT IS SO ORDERED.

BIVINS, J., concurs.

DONNELLY, J., dissents.

---

1. There are two other issues discussed in the dissent which we do not address. First, Worker's briefs on appeal do not seek relief on the ground that Dr. Cooper had failed to sign his deposition, so we need not determine what relief would be appropriate for such a violation. *See State ex rel. Human Servs. Dep't v. Staples,*

DONNELLY, Judge (dissenting).

I respectfully dissent. I am unable to agree with the majority's determination that the Workers' Compensation Judge (WCJ) satisfied fundamental due process requirements in conducting the proceedings below. Affirmance of the WCJ's decision on the merits under circumstances where neither Worker nor Respondents were alerted to the fact that the proceedings had been transformed from a hearing on Respondents' motion for summary judgment to a trial on the merits was prejudicial and establishes questionable precedent for future workers' compensation trials.

The majority concedes that the WCJ dispensed with the formalities of a trial and that, at the conclusion of the hearing on Respondents' motion for summary judgment, "[t]he WCJ should have proceeded by first stating that she denied the motion for summary judgment and then asking the parties if they wished to present opening statements and offer evidence with respect to the trial on the merits." However, they reason that the decision on the merits should be affirmed because worker was unable to prove causation by expert medical testimony; thus, Worker's substantial rights were not prejudiced. I disagree with this analysis.

The administrative hearing in this case did not satisfy the requirements of basic due process. The right to a fair hearing necessarily embraces the right of the parties to be informed that they are involved in a trial on the merits. This requirement is heightened where, as was the case here, Worker was appearing pro se. It is somewhat inconsistent to conclude that Worker presented sufficient facts to withstand a motion for summary judgment, including facts bearing upon causation, and yet no prejudice can result from the failure of the

98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (courts should be wary of taking upon itself to raise, argue, and decide legal questions overlooked by the lawyers). Second, because the WCJ denied the motion for summary judgment, we need not decide whether the motion was untimely or otherwise procedurally deficient.

WCJ to advise the parties that the proceedings had, at some point unknown to either Worker or Respondents, become a trial on the merits. I would reverse and remand for a new trial on the merits.

The procedure employed by the WCJ in dismissing Worker's claim in the instant case leaves considerable doubt as to whether the WCJ, in fact, adjudicated the issue of causation as part of Respondents' motion for summary judgment or proceeded to dispose of Worker's claims on the merits. Under either alternative, requisite due process requirements were not observed. *See Fidelity Nat'l Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 108, 583 P.2d 470, 472 (1978) (summary judgment should not be used as a substitute for trial); *see also Holland v. King*, 500 N.E.2d 1229, 1238 (Ind.Ct.App.1986) (even if court believes nonmoving party may not prevail at trial, summary judgment should not be entered where there is a conflict in material facts or different inferences may be drawn).

Worker's claim was originally filed in April 1990. However, as the WCJ noted at the status conference held in February 1991, the case had become "lost in the system" in its early stages. Once the case was rediscovered, it was set for formal hearing, formal discovery was authorized in Montana, other discovery permitted, and the case was then disposed of on the merits in slightly over two months. Respondents' motion for summary judgment was filed after the deadline set by the WCJ for filing motions had passed. The depositions on which the motion was based were not transcribed at the time the motion was filed, and were served on Worker less than forty-eight hours before the motion hearing.

It is axiomatic that due process applies to administrative proceedings. *See Reid v. New Mexico Bd. of Examiners in Optometry*, 92 N.M. 414, 416, 589 P.2d 198, 200 (1979). Moreover, as our Supreme Court has observed, due process requires more than notice and an opportunity to be heard; in addition, it requires that the proceedings be fundamentally fair and that "the ap-

pearance of complete fairness be present." *Id.* These requirements apply with particular force in administrative proceedings "where many of the customary safeguards affiliated with court proceedings have, in the interest of expedition and a supposed administrative efficiency, been relaxed." *Id.* Administrative proceedings which adjudicate substantial rights are bound by fundamental principles of justice and procedural due process. *State ex rel. Battershell v. City of Albuquerque*, 108 N.M. 658, 662, 777 P.2d 386, 390 (Ct.App.1989). In this case, the WCJ dispensed with basic trial procedures to such an extent that the proceedings neither appeared to be nor were fair to Worker.

At the beginning of the proceedings on April 15, 1991, the WCJ stated that the parties would "proceed initially [that] afternoon on a motion for summary judgment *and then determine whether or not we need a formal trial thereafter.*" (Emphasis added.) At the end of the first day the WCJ announced that the hearing would resume on the following day and if Worker could point to "even just a little bit of evidence [regarding causation] I'm going to say there is a factual issue and we'll go to a full trial. But right now * * * I haven't found anything." When the hearing resumed on April 16, 1991, the WCJ announced that the parties were present on "*a continuation of yesterday's hearing on a motion for summary judgment.*" (Emphasis added.)

Throughout the remaining portion of the hearing, the statements of the WCJ reinforced the impression that the parties were proceeding on the motion for summary judgment, not a trial on the merits. At one point the WCJ stated, "I really don't see enough evidence to go forward with trial." Still later, the WCJ, in explaining to Worker that he must respond to the motion for summary judgment by showing that there is a genuine issue of fact, stated, "there is nothing that you've shown me at this point," indicating the existence of material disputed facts. The WCJ explained that

she had read the depositions carefully to determine whether Worker had met the standard of a compensable claim and concluded that the evidence was "just not [there]," and added, "if I denied the motion we would go forward with the trial and I don't think you have any other evidence to offer me at the trial."

At some point unknown to the parties on both sides, however, the WCJ determined that the proceedings had moved from a hearing on the motion for summary judgment to a trial on the merits. The parties were not alerted by any ruling, however, that the WCJ had concluded that the motion for summary judgment should be and was denied, and that the case was now to be heard on the merits. Under the procedure followed by the WCJ below, no opportunity was given to either party to present opening statements, neither Worker nor his wife was administered the oath as witnesses, no right of cross-examination was accorded either party, no formal introduction of depositions or exhibits was made or ruled upon, and no closing statements were made. Yet, the WCJ undertook to render a decision on the merits. Under these circumstances, the proceedings lacked minimal procedural requisites to constitute a trial on the merits. *Cf. Summers v. American Reliable Ins. Co.,* 85 N.M. 224, 226, 511 P.2d 550, 552 (1973) (parties turned summary judgment hearing into trial as evidenced by presenting opening statements, examining and cross-examining witnesses, admitting exhibits into evidence, and resting at conclusion of evidence); *Battershell,* 108 N.M. at 662–63, 777 P.2d at 390–91 (in quasi-judicial proceedings witnesses should be sworn and testimony taken under oath, unless administration of oath is waived); *In re Protest of Miller,* 88 N.M. 492, 498, 542 P.2d 1182, 1188 (Ct. App.) (litigants in administrative proceedings must be given full opportunity to be heard with all rights related thereto), *cert. denied sub nom., Dale Bellamah Land Co. v. County Assessor for Bernalillo County,* 89 N.M. 5, 546 P.2d 70 (1985).

Further indicia of the WCJ's sua.sponte transition to a trial on the merits appears in the WCJ's ruling at the conclusion of the proceedings, where she stated, "what I am going to do is treat [Respondents'] motion for summary judgment as a motion to dismiss your claim, and I am going to grant that motion."

In order to treat Respondents' motion for summary judgment as a motion to dismiss on the merits, the WCJ had to first deny the motion for summary judgment. The parties, however, were never advised of this ruling or the WCJ's disposition of the motion. At the very minimum, due process of law requires that litigants must be apprised that they are involved in a trial on the merits so that they can exercise their trial rights. *See McCoy v. New Mexico Real Estate Comm'n,* 94 N.M. 602, 604, 614 P.2d 14, 16 (1980) (embodied in procedural due process is reasonable notice, the opportunity to be heard and present a claim or defense); *see also Uhden v. New Mexico Oil Conservation Comm'n,* 112 N.M. 528, 530, 817 P.2d 721, 723 (1991) ("Administrative proceedings must conform to fundamental principles of justice and the requirements of due process of law.").

Where administrative proceedings deprive a party of a fair and full hearing, with opportunity to cross-examine witnesses, inspect documents, offer evidence in explanation or rebuttal, and to be fully apprised of evidence, there is no hearing. *Transcontinental Bus Sys., Inc. v. State Corp. Comm'n,* 56 N.M. 158, 179, 241 P.2d 829, 842 (1952). Administrative adjudicatory proceedings must adhere to the fundamental principles of procedural due process and justice. *Uhden,* 112 N.M. at 530, 817 P.2d at 723; *Battershell,* 108 N.M. at 662–63, 777 P.2d at 390–91.

In addition to a failure to follow basic trial procedure, the proceedings conducted by the WCJ herein failed to conform to requisite administrative due process when Worker was denied sufficient time to respond to the motion for summary judgment and to go forward with a trial on the merits because of the late-filed depositions of Respondents. *See March v. State,* 105 N.M.

453, 455, 734 P.2d 231, 233 (1987) (due process includes reasonable amount of time to prepare). Worker alerted the WCJ to his need for additional time to prepare for the hearing on the motion and proceedings below in a variety of ways.

At various times, Worker pointed out to the WCJ that he had not had sufficient time to prepare for the hearing, that Dr. Vincent's deposition conflicted with what the doctor had told him, and that Dr. Vincent had requested, but was not given, an opportunity to review and sign his deposition. In addition, Worker stated that he felt that his heart and lung problems were caused, in part, by breathing hydrogen sulfide gas in his work over the years, and asked for an opportunity to obtain expert testimony on this issue. Neither doctor had been deposed about this issue during his deposition. However, Dr. Cooper stated in a form filed with the Workers' Compensation Administration, which was before the WCJ, that "ASCVD [arteriosclerotic cardiovascular disease was] probably not related but M.I. [myocardial infarction] occurrence may well be related to [Worker's] work schedule *and/or gas exposure* and is certainly triggered by work hours and conditions." (Emphasis added.) This evidence raised a material issue of fact as to causation requiring a trial on the merits.

In spite of Worker's showing of the brief time span between his receipt of the depositions and the scheduled hearing, the WCJ denied Worker's request for a continuance, informing him that there had to be a point at which discovery ended. While I agree that discovery must end at some point, discovery only had been authorized six weeks earlier, the WCJ permitted Respondents to depart from the discovery time limits contained in the pretrial order, one of the deponents had not signed his deposition, and Worker had received the depositions less than forty-eight hours prior to the hearing. *See Cordova v. City of Albuquerque,* 86 N.M. 697, 705, 526 P.2d 1290, 1298 (Ct.App.1974) (untimely filed affidavits in support of motion for summary judgment held properly admissible, but a continuance may be necessary to allow defending party sufficient time to prepare response); *see also Richards v. Upjohn Co.,* 95 N.M. 675, 681, 625 P.2d 1192, 1198 (Ct.App.) (late filed affidavits should be permitted; however, hearing should be postponed where other party needs more time to rebut matters in affidavit), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980).

I disagree that the procedures and rulings of the WCJ at the hearings conducted below satisfied fundamental due process. The order of dismissal should be reversed and the case remanded for a full hearing on the merits.